---

## In re KANE.

(District Court, N. D. New York. May 22, 1908.)

**1. DESCENT AND DISTRIBUTION—INHERITANCE FROM MINOR CHILD.**

Where a bankrupt's five children were the sole owners in fee as tenants in common of certain real property and machinery, etc., connected with a mill thereon, on the death of one of such children leaving the bankrupt surviving him, 2½ months prior to the bankruptcy, the bankrupt became the owner and seised and possessed in fee of an undivided one-fifth of the real estate by operation of law, and to one-fifth of the personal property subject to administration in due course and to the rights of the creditors, if any, of such deceased child.

**2. BANKRUPTCY—PROPERTY ACQUIRED BY TRUSTEE.**

Where 2½ months prior to bankruptcy the bankrupt inherited from his child an undivided one-fifth of certain real and personal property, such interest passed to and vested in the bankrupt's trustee as of the date of the adjudication, subject to administration of the personal estate and the rights of creditors of the deceased child, if any.

**3. SAME—POSSESSION.**

Where a bankrupt prior to bankruptcy inherited real and personal property from a deceased child, the child's administrators, while entitled to possession of the personal estate pending administration, had no right or interest in the real estate for any purpose.

**4. SAME—DISBURSEMENT OF FUNDS—SUMMARY PROCEEDINGS—RECOVERY—PARTIES.**

A bankrupt's five children were the sole owners of certain real and personal property, constituting a mill insured for $47,200. Two and one half months prior to bankruptcy one of the children died, leaving the bankrupt as his sole heir entitled to an undivided one-fifth of the realty and one-fifth of the personal estate subject to administration. Two months after the appointment of a trustee for the bankrupt the property was substantially destroyed by fire, and $40,000.35 was recovered from the insurance companies, which was paid to defendant bank. The bankrupt being indebted to the bank in the sum of $19,000 on a note secured by an indorsement and by certain collateral, the bank paid such amount out of the proceeds of the insurance to itself, by an agreement with the parties in interest other than the bankrupt's trustee, who was not consulted, and transferred to them the note and collateral. The four

children who executed the agreement with the bank to transfer to it the $19,000 had an interest in the fund equal to that sum at the time of the transfer. The bank thereafter permitted the balance of the fund to be checked out on the joint checks of the four surviving children and the administrators of the deceased child, with knowledge that a portion of such fund belonged to the bankrupt's trustee. *Held*, that a summary application by such trustee to compel the bank to pay over the remaining $6,474.45 was not maintainable against the bank alone; the other parties who participated in the withdrawal of such fund to the prejudice of the bankrupt's trustee being necessary parties.

5. SAME—TRUSTEE—NEGLECT OF DUTY.

Where a bankrupt's trustee permitted money in which the bankrupt was interested to be paid out and dissipated by a bank and certain joint owners without objection, when he could have ascertained the existence of the fund and prevented such payments, he was guilty of negligence or misconduct.

In Bankruptcy. Review of order of Referee Edwin A. King dismissing this proceeding, which seeks a summary order directing the National State Bank of Troy, N. Y., to pay over to Henry A. Conway, as trustee of the estate in bankruptcy of the above-named bankrupt, Pierce D. Kane, the sum of $6,895.65, and which sum the said trustee alleges belongs to such estate and is in the hands of the said bank, or that, in the eye of the law, such sum is in its possession.

See 131 Fed. 386.

Thomas S. Fagan (H. D. Bailey, of counsel), for trustee.

Henry J. Speck (George B. Wellington, of counsel), for the bank.

RAY, District Judge. Pierce D. Kane, on his own petition, was duly adjudged a bankrupt July 6, 1899, and the first meeting of creditors was held July 26, 1899, of which the National State Bank of Troy, N. Y., had notice. On the same day Henry A. Conway was duly chosen and appointed trustee of the bankrupt estate. He at once duly qualified and became vested with the title of the bankrupt in all his real and personal estate, etc., as of the 6th day of July, 1899. Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451). This, of course, the bank knew.

Pierce D. Kane had five children, of whom J. Francis Kane was one. J. Francis Kane, an infant 14 years of age, died intestate on the 16th day of April, 1899, leaving his said father, Pierce D. Kane, the above-named bankrupt, his sole and only heir at law. The five children of said Pierce D. Kane were the sole owners in fee as tenants in common of a certain property, known as the "Mill Property," consisting of real estate and personal property, machinery, etc., connected therewith, and on the death of said J. Francis Kane, April 16, 1899, and about 2½ months prior to the bankruptcy, said Pierce D. Kane, now bankrupt, became the owner and seised and possessed in fee of the one undivided one-fifth part of said real estate by operation of law, and also the owner of the one undivided one-fifth part of the said personal property, subject, of course, to administration in due course and the rights of the creditors of J. Francis Kane, if any. This is the property and these the property rights that passed to and vested in the trustee in bankruptcy on or as of the 6th day of July, 1899. The

personal estate was, of course, subject to administration in due course and to the rights of the creditors of J. Francis Kane, if any, as the trustee took same in the same plight and condition it was in when bankruptcy intervened. No administrator of the estate of said J. Francis Kane was appointed until December, 1899, when James H. Kane, a brother of said J. Francis Kane, and said Pierce D. Kane, then bankrupt, were duly appointed the administrators of the estate, goods, chattels, and credits of said J. Francis Kane, and in the proper Surrogate's Court having full jurisdiction of that question it has been duly adjudged that said J. Francis Kane owed no debts. Title to the personal property was therefore in these administrators for the purpose of paying funeral expenses and expenses of administration. Subject thereto, as stated, title to the personal property was in the trustee in bankruptcy from and after July 6, 1899. We therefore have the bankrupt, in the capacity of administrator, administering upon an estate which had passed to and vested in the trustee in bankruptcy subject to administration. The administrators were, of course, entitled to the possession of such personal estate pending administration; but they had no right or interest in the real estate for any purpose.

At the time of the adjudication there were outstanding 21 policies of insurance on said "Mill Property," insuring the owners thereof, named in said policies, viz., James H. Kane, Nicholas T. Kane, Pierce D. Kane, Jr. (not the bankrupt), J. Francis Kane, and Elizabeth Kane, said children of Pierce D. Kane. Thirteen of these were written and delivered prior to the death of J. Francis Kane, and three thereafter prior to July 6, 1899, and five (rewritten evidently) thereafter. All were written under the direction of the same agent, who represented the various companies. The insurance was carried in the name of J. Francis Kane after his death, and after the title to the one-fifth had passed to Pierce D. Kane, and even after the title had passed from him to the trustee in bankruptcy, Henry A. Conway. It is evident that this trustee was negligent and unfit for the place, as he effected no insurance, and did not even take the pains to ascertain whether or not the property was insured. Under the 21 policies the real estate was insured for $19,500, and the fixed and movable machinery and other personal property for $24,500, and the stock in process of manufacture for $3,200; total, $47,200. The trustee had no knowledge of this insurance until after a fire which substantially destroyed the property, and which occurred on the 18th day of September, 1899, about two months after his appointment. Proofs of loss were made by James H. Kane and presented, and the loss was adjudicated at $16,597.56 damage to the real estate and buildings, and $23,402.79 damage to fixed machinery, etc.; total, $40,000.35. Each policy contained a clause reading:

"Wherever in this policy the word 'insured' occurs, it shall be held to include the legal representative of the insured."

The proof of loss against the German Fire Insurance Company, one of the insuring companies, and which is a sample of all, states:

"Personally appeared James H. Kane, for himself, N. T. Kane, P. D. Kane, Jr., Elizabeth Kane and as administrator of Est. of Francis Kane, dec'd, who, being duly sworn, deposes and each for himself says that the following state-

ment and the papers therein referred to and signed with his own hand contains a particular, just, and true account of their loss," etc.

After the fire the National State Bank of Troy, N. Y., made claims on the property and insurance money which seem to have been debts owing the bank by Pierce D. Kane, the bankrupt, with Mrs. Nicholas T. Kane as indorser; for the attorney for the trustee called James H. Kane as| a witness, and he testified:

"They were debts of my father. Mrs. Nicholas T. Kane was an indorser for my father, and these were debts of his."

The bank, by arrangement with the other owners of the property and the administrators, ignoring the trustee in bankruptcy in the transaction, secured the indorsement over to itself of all the checks and drafts given by the several insurance companies, amounting to $40,000, and took possession thereof. The bank had no claim against Pierce D. Kane which had ripened into a lien on the share or interest in the estate of J. Francis Kane which fell to him. If it had any claim or claims against Pierce D. Kane, it or they are provable in bankruptcy. It seems that the bank held certain securities which belonged to Mrs. Nicholas T. Kane, the indorser of the notes of Pierce D. Kane. Soon after, or about the time the bank obtained possession of the insurance money, it made an agreement with James H. Kane, Nicholas T. Kane, Pierce D. Kane, Jr., and Elizabeth Kane, by which it was to take, and under which it did take, $19,000 of this money as its own in satisfaction of its claims against Pierce D. Kane, bankrupt, and Mrs. Kane, the indorser, and made an assignment thereof and of the collateral to them. Five thousand dollars was checked out or taken out to pay a mortgage on the insured property; but in doing this the trustee in bankruptcy had no part, nor was he consulted or invited into the transaction. He was either stupid, dishonest, or a silent party in the transaction. He denies all knowledge and participation. On getting the checks or drafts into its possession, and having made collection thereof, the bank, when the collections amounted to $25,474.-45, and on the banking day of January 24, 1900, of its own motion placed this sum in a deposit account subject to joint check in the names of James H. Kane, Nicholas T. Kane, Pierce D. Kane, Jr., Elizabeth Kane, and the administrators of J. Francis Kane, crediting the account that sum, but simultaneously debited the account $19,000, without check, leaving $6,474.45 to the joint credit of such persons, and gave no notice to the trustee, although it then knew of the bankruptcy proceedings and of the rights of the trustee in the fund. This is made plain by the evidence of Henry J. Speck, then attorney for the bank in this very transaction. As the drafts or checks came in from the insurance companies thereafter, the amount of same, after they were indorsed by such persons and the bank, to whom they were made payable, was placed to their credit in such account. It was all checked out subsequently on the joint checks of these persons; but who had the money, to whom the checks were payable, etc., does not appear. One thing is certain. The trustee in bankruptcy got none of it, and he made no effort to obtain any of it, until cited to an account in 1903 before the referee in bankruptcy. He then or soon thereafter

cited the administrators to an accounting for this money; but on the showing made, not before me, or appearing in this proceeding, the surrogate held that, as all this money was derived from insurance on real estate, he had no jurisdiction to call the administrators to an account therefor; and this notwithstanding the facts that the policies were payable to the legal representatives of such of the insured as were dead, that they applied for it with the others as administrators of J. Francis Kane, obtained it as such, and checked it from the bank as such administrators. This ruling was cordially acquiesced in by this trustee, who then or soon thereafter commenced this summary proceeding against the bank.

It is clear that the four persons, who executed at some time the written agreement with the bank to transfer to it the $19,000, had that interest in the fund and had a perfect right to transfer it to the bank in exchange for the claim and collateral it held against the bankrupt and his indorser. As to the balance of the fund it seems clear that it was perfectly proper to pay the mortgage, which was a lien on the real estate. When I speak of realty or real estate, I refer to buildings and fixed machinery, etc., which were insured. The settlement of the loss, while it specifies the loss on building, and also that on fixed machinery and other machinery, does not separate the fixed machinery from the other. Hence it is not known how much the loss on personal property was, and no pains has been taken to show that. Under the evidence, in many respects there being a dispute as to material facts, but assuming everything in favor of the trustee, or petitioner here, I do not see how this summary proceeding against the bank alone can be sustained. The bank was an interloper in getting possession, and succeeded in so doing by misrepresentation; and it succeeded in getting its pay out of the fund, but not from the share of the bankrupt. It assumed to put the balance to the credit of the persons named, ignoring the rights of the trustee; but still it did not appropriate any part of it to its own use, or hold it or claim it as its own. The bank allowed and aided the administrators and James H. Kane, Nicholas T. Kane, Pierce D. Kane, Jr., and Elizabeth Kane, to whom, with the bank, the checks or drafts of the insurance companies were made payable, to draw out the money, ignoring the trustee, who really owned a one-fifth interest. But that interest was sent to the bank as payable to the administrators. It may be that the bank is liable with the others in a plenary action for taking an active part in dissipating this fund. It may be it had a duty to perform to the trustee under all the circumstances, and that it is liable for a breach of that duty; that it was a trustee, etc. But, if so, that question must be determined in a suit brought for the purpose. This proceeding is not the appropriate one. I do not understand that a summary application of this description can be maintained to enforce the liability of a party for damages or to enforce a trust arising by operation of law. It goes upon the theory that the party proceeded against has property or money in his possession—or in the eye of the law has it—which it is his duty to pay over, but will not.

The bank put in three different answers, finally changing its attitude completely, and on the trial before the referee changed again;

but, after all, the facts are what should determine, and must determine, the action of the court. As to the $19,000, the only part of the fund which the bank retained or had when this proceeding was instituted, in August, 1903, the bank sets up an adverse claim of absolute ownership, which arose in December, 1899, or January, 1900, after the adjudication in bankruptcy, and after the appointment of the trustee; but· on the evidence this money came to it from a fund four-fifths of which actually belonged to the parties delivering it ·over to the bank, or consenting that it take it. One-fifth or more remained on deposit in the bank. It was agreed that the $19,000 taken by the bank was to come out of the share of such four parties. It is presumed that it did. If, after that, the bank allowed those four persons to participate with the administrators in drawing it out, it may be presumed it supposed it would go to the party entitled. It stood in their names in the bank, and they only could properly check it out. If the bank was guilty of any actionable wrong or negligence in allowing that money, and what came in and went into the account thereafter, to be drawn out and dissipated, if it was, there must be a proper plenary action or proceeding, with all the actors made parties, in which the rights and liabilities of all can be determined. The insurance companies sent the drafts or checks payable to the order of the insured who were living and to the administrators of the one who was dead. It may be, and is, a question whether the bank could lawfully do otherwise than pay the proceeds over to the payees of such drafts and checks. Was there collusion, and an executed scheme and conspiracy, to which the bank was a party, to divert this money from the trustee in bankruptcy and prevent his obtaining it? There is much ·evidence pointing in that direction. But, assume such to be the fact; is the remedy by such a summary proceeding as this? I think not.

This court does not agree with the referee in some of his findings of fact; but it would be futile for me to make new findings, as the Circuit Court of Appeals makes its own and proceeds accordingly. So the referee has failed to find, or present in proper findings, many facts which would be very pertinent in some forms of action. Taking the view of the law he did, and in which this court concurs, it was unnecessary to pass on many important questions of fact and law; and this court has purposely refrained from so doing, or from forming any opinion, as the matter may be before it in a different form, when their proper decision may become very important. The trustee made demand for the share of this money belonging to the estate in bankruptcy, but not until the bank had paid over all of it except the $19,000. No part of this money received from the insurance companies ever came into the actual possession of the trustee. The insurance companies sent all the money to other parties. Those parties took it and disposed of it. Can this court, in this summary,, proceeding against the bank alone, determine that it was not properly disposed of so far as the bank is concerned, and hold it liable if it finds it was not?

Elizabeth Mahoney now, formerly Elizabeth Kane, and James H. Kane, the administrator of J. Francis Kane, were sworn. It does not appear that Kane was asked in particular what was done with all the

money. It does appear that some of it was used to pay the funeral expenses of Pierce D. Kane, who died, and those of his wife and of J. Francis Kane. The checks upon which it was drawn from the bank have disappeared. A part of this money, that derived from the insurance in the real estate, in equity and in law belonged to the trustee. Can it be that James H. Kane, who drew it from the bank, and those who knowingly participated in its dissipation, are not accountable and liable for it in a proper suit or proceeding against them? I am not now called upon to decide whether or not these participants in the dissipation of this money can be brought into this proceeding, and held liable, and directed to pay over the money. I am clear that the proceeding cannot be maintained against the bank alone. I am not intimating it is not liable, with others, in a proper action or proceeding, to account for these moneys and make the estate in bankruptcy good. The proposition of the bank that no one is liable or accountable to the trustee in bankruptcy therefor is, in my judgment, entirely unfounded. The insurance covered the valuable interest of the bankrupt. It was paid on the claim and demand of the administrator of the former owner, to whose title and interest the bankrupt and his trustee succeeded, to such administrator. It did not thereby become his money, or no one's money. It was and remained the property of the bankrupt estate. That the trustee has been negligent in the matter and is accountable to the creditors is beyond all question. Instead of proceeding to care for the estate of the bankrupt, protect and preserve and reduce it to money, by inattention and negligence, seemingly, he has allowed it to be dissipated. It may be that the Circuit Court of Appeals can find a way to hold this bank alone liable in this proceeding; but I cannot. That this trustee has a cause of action, and a remedy by action or by summary proceedings, against some one, is very plain. Is it the bank, or the person or persons who took the money from the bank and failed to turn it over to the trustee? Could the bank have refused to pay it over to the persons to whom the checks or drafts of the insurance companies were payable? But, as it had the possession of the money and knew of the rights and interests of the trustee, if it aided and abetted the administrator, or the administrator and others, to misapply or waste it, or withhold it from the trustee, for such wrong it is, of course, liable. But is this a proper proceeding in which to determine such a question?

However, it seems to me that, if so advised, the trustee should be permitted to bring in the other parties and proceed against all in this summary way; that when this is done, if done, the referee should pass upon the merits. The title to real estate and fixed machinery vested in the trustee directly. The insurance money took its place. It was property of the estate. It was in the custody and subject to the jurisdiction of this court. I think it clear that, within Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, these persons held the one-fifth of this insurance money for the trustee in bankruptcy except that derived from insurance on purely personal property, and that this court has jurisdiction to compel its surrender on petition and rule to show cause. In Mueller v. Nugent, supra, it is held that:

"The bankruptcy court has jurisdiction to compel the surrender of money or other assets of the bankrupt, or that of some one for him, on petition and rule to show cause."

By section 2 of the bankruptcy act the court has power to bring in other parties and cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto.

The order of the referee, dismissing the proceeding, is reversed, so that, in case the petitioner is so advised and elects so to do, he may amend and bring in all other necessary parties. In case that is done, the matter will be heard and decided on the merits; but, in case the petitioner does not so elect, then the referee will make an order dismissing the proceeding, without prejudice to other appropriate actions or proceedings.