UNITED STATES EX REL. WILLOUGHBY, TRUSTEE, ET AL. *v.* HOWARD ET AL.

No. 30. Argued November 10, 1937.—Decided January 3, 1938.

446

*Mr. Walter E. Beebe*, with whom *Messrs. Thurlow G. Essington, George B. McKibbin* and *Hamilton K. Beebe* were on the brief, for petitioners.

*Mr. Lloyd Heth*, with whom *Messrs. Julius Moses, William P. Smith, Walter Bachrach, Stanley J. Morris* and *R. Weyand* were on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The question for decision is whether a trustee (or receiver) in bankruptcy and the surety on his official bond can be held liable for the loss resulting from the insolvency of the bank in which the estate's funds were deposited, if it was one of the depositories designated by the court under U. S. C. Title 11, § 101.

Sam Howard was trustee in bankruptcy of 114 separate bankrupt estates, and was receiver of 9, in the federal court for northern Illinois, Eastern Division. Between August 20, 1930, and June 21, 1932, he had deposited the funds of each of the 123 estates in the Phillip State Bank and Trust Company of Chicago, as ordinary commercial accounts. On the latter date the bank, being insolvent, closed its doors. The aggregate of his bankruptcy deposits in the 123 accounts was, at the time of its closing, over eight times the penalty of the bank's depository bond of $50,000. The only dividend received by the bankruptcy estates was about 11 percent—which was paid from the amount collected on the depository bond.

As required by U. S. C. Title 11, § 78, Howard had given an official bond to the United States for each estate, and Continental Casualty Company was the surety. The form of the trustee's bond was that prescribed by Form 25 of the General Orders and Forms in Bankruptcy, pursuant to U. S. C. Title 11, § 53.

The obligors bound themselves to pay any loss resulting to the estate from failure by Howard, (a) to obey any order of the court, (b) truly and faithfully to account for all moneys, (c) faithfully to perform his official duties as trustee.[1] It is agreed that the condition of the bonds given as receiver was in effect the same.

Howard resigned as trustee or receiver of each estate. Chester A. Willoughby, who succeeded him, brought in that court, pursuant to leave, three actions in the name of the United States against Howard and the Casualty

---

[1] The condition of each bond given as trustee was: "Now, therefore, if the said Sam Howard, Trustee as aforesaid, shall obey such orders as said Court may make in relation to said trust, and shall faithfully and truly account for all the moneys, assets and effects of the estate of said Bankrupt, which shall come into his hands and possession, and shall in all respects faithfully perform all his official duties as said Trustee, then this obligation to be void; otherwise, to remain in full force and virtue."

Company. In these actions, which were consolidated, recovery was sought on each bond on the ground that its condition had been broken by Howard's failing to perform his official duties as trustee or receiver. The failure assigned was that he negligently deposited the funds, or permitted them to remain, in the Phillip Bank, whereas ordinary care and prudence would have required him to desist from such practice and take care that the aggregate of the deposits of estate funds in that bank should not exceed the penalty of the depository bond. The defendants moved to dismiss the complaints on the ground that they failed to disclose any breach of the condition of the bonds. Upon the denial of the motions, the consolidated cases were heard before a jury on the issue whether Howard had been negligent in the performance of his official duties in so depositing the funds, or in leaving them, in the Phillip Bank.

The following, among other facts, appeared: About twenty Chicago banks had been designated by the court as depositories of bankruptcy funds in that district. Howard, who had for years served as trustee and receiver of bankrupt estates, had, prior to August, 1930, deposited the funds of the estates either in the Central Trust Company of Illinois or the Foreman State National Bank of Chicago. In July he was solicited to transfer his bankruptcy deposits to the Phillip Bank, a small institution. He agreed to do so if the Phillip Bank should become a depository, would make him unsecured personal loans sufficient to discharge his existing personal indebtedness to the Central Trust Company and the Foreman State National Bank—and would give him thereafter like accommodation. The Phillip Bank loaned him $11,000; Howard paid his indebtedness to the other banks; and on August 20, the Phillip Bank qualified as a depository, giving a bond in the sum of $50,000. Within the next

few days, Howard opened in the Phillip Bank accounts for bankruptcy estates with deposits aggregating $249,-968.15. The number of his accounts, the aggregate amount on deposit, and the amount of his personal loans from that bank increased from time to time. When the bank closed, the accounts numbered 123, the deposits aggregated $416,833.90, and the loans to Howard $17,500. The Phillip Bank's depository bond remained at $50,000. He knew that during this period of deposit there were several heavy runs on the Phillip Bank, its deposits were steadily declining and its resources were being drained.

Defendants' motions for a directed verdict were denied; the jury found for the plaintiff verdicts aggregating $225,-740.45; a new trial was refused; and an appeal was taken to the Circuit Court of Appeals, where the case was heard first by two judges, then reargued before the full court. A condensed report of the evidence and other proceedings at the trial occupies 250 pages of the printed record. Much evidence offered by defendants had been excluded; many rulings sought had been refused; and timely exception had been taken to instructions given to the jury and to those refused. Eighty-four assignments of error had been filed with the petition for appeal. But the appellate court examined only a few of the assigned errors. For it held that the trial court should have directed a verdict for the defendants, on the ground that, since Howard had deposited and maintained the funds in one of the banks designated by the court as depositories, he fully performed his official duty in respect to the care of the funds. It reversed the judgment with direction to grant a new trial and to proceed in accordance with the opinion. 87 F. (2d) 243. One judge dissented. We granted certiorari because of the importance of the question presented.

*First.* That the obligors in the bonds are liable only for breach by Howard of an official duty may be assumed.

By the common law[2] every trustee or receiver of an estate has the duty of exercising reasonable care in the custody of the fiduciary estate unless relieved of such duty by agreement, statute, or order of court. Obviously, Howard was not relieved of the duty by any agreement. The question for decision is whether under the Bankruptcy Act,[3] or any order of the court, this duty in respect to the care of funds was limited to depositing them in one of the depositories designated by the court under U. S. C. Title 11, § 101, so that Howard was relieved of all duty to exercise care in selecting the depository and maintaining funds therein.

*Second.* No statute relieved Howard of the common law duty to exercise care in the custody of the funds.

---

[2] Receiver in Bankruptcy: *In re Curtis,* 76 F. (2d) 751, 753 (C. C. A. 2); *In re C. M. Piece Dyeing Co.,* 89 F. (2d) 37, 40 (C. C. A. 2); *Hartford Accident & I. Co.* v. *Crow,* 83 F. (2d) 386, 388 (C. C. A. 6). Trustee in Bankruptcy: *In re Reinboth,* 157 Fed. 672, 674 (C. C. A. 2); *Carson, Pirie, Scott & Co.* v. *Turner,* 61 F. (2d) 693, 694 (C. C. A. 6); *In re Kuhn Bros.,* 234 Fed. 277, 281 (C. C. A. 7); *In re Newcomb,* 32 Fed. 826 (N. D. N. Y.); *In re B. A. Montgomery & Son,* 17 F. (2d) 404, 406 (N. D. Ohio); compare *Delaware* v. *Irving Trust Co.,* 92 F. (2d) 17, 19 (C. C. A. 2); *In re Kane,* 161 Fed. 633, 639 (N. D. N. Y.). Equity Receiver: *Gutterson & Gould* v. *Lebanon Iron & Steel Co.,* 151 Fed. 72 (C. C. M. D. Pa.); *Hitner* v. *Diamond State Steel Co.,* 207 Fed. 616, 622 (D. Del.). Trustee: *Barney* v. *Saunders,* 16 How. 535, 545–46; *U. S. National Bank & T. Co.* v. *Sullivan,* 69 F. (2d) 412, 415–16 (C. C. A. 7); *Fidelity & Deposit Co.* v. *Redfield,* 7 F. (2d) 800, 802 (C. C. A. 9); *Johns* v. *Herbert,* 2 App. D. C. 485, 497; *Caldwell* v. *Hicks,* 15 F. Supp. 46, 52 (S. D. Ga.); compare *Strauss* v. *U. S. Fidelity & G. Co.,* 63 F. (2d) 174, 176–77 (C. C. A. 4); *American Bonding Co.* v. *Richardson,* 214 Fed. 897, 901 (C. C. A. 6); *Thompson* v. *Hays,* 11 F. (2d) 244, 247 (C. C. A. 8). Executor: see *Taylor* v. *Benham,* 5 How. 233, 275; *Glasgow* v. *Lipse,* 117 U. S. 327, 333–334; *Moore* v. *Moore,* 47 App. D. C. 18, 27. Guardian: *Lamar* v. *Micou,* 112 U. S. 452, 465; *Corcoran* v. *Kostrometinoff,* 164 Fed. 685, 687–688 (C. C. A. 9).

[3] July 1, 1898, c. 541, 30 Stat. 544, as amended; U. S. C. Title 11.

The only relevant provisions of the Bankruptcy Act prescribing duties of the trustee are:

"Sec. 61 (U. S. C. Title 11, § 101). *Depositories for Money.* Courts of bankruptcy shall designate, by order, banking institutions as depositories for the money of bankrupt estates, as convenient as may be to the residences of trustees, and shall require bonds to the United States, subject to their approval, to be given by such banking institutions, and may from time to time as occasion may require, by like order increase the number of depositories or the amount of any bond or change such depositories."

"Sec. 47 (U. S. C. Title 11, § 75). *Duties of Trustees.* (a) Trustees shall respectively . . .

"(3) deposit all money received . . . in one of the designated depositories;

"(4) disburse money only by check or draft on the depositories in which it has been deposited;

"(5) furnish such information concerning the estates . . . and their administration as may be requested by parties in interest; . . .

"(7) lay before the final meeting of the creditors detailed statements of the administration of the estates;

"(8) make final reports and file final accounts with the courts fifteen days before the days fixed for the final meetings of the creditors; . . .

"(10) report to the courts, in writing, the condition of the estates and the amounts of money on hand, and such other details as may be required by the courts, within the first month after their appointment and every two months thereafter, unless otherwise ordered by the courts; . . ."

Obviously the Act does not in terms relieve the trustee of the common law duty to exercise care in the custody of funds. The designation of banks of deposit proper for bankruptcy funds, like the listing of legal investments

for trustees and guardians, limits the discretion which can be exercised by the depositing officer and may render him absolutely liable for the loss of funds placed in a non-designated depository. But the fact that the freedom of choice of the fiduciary is limited by statute does not relieve him of the duty of exercising care and prudence within the field left to his discretion. As he may not shut his eyes to the fact that a so-called legal investment is no longer sound, he may not disregard the fact that a depository proper when designated is no longer safe.[4] The mere imposition of statutory duties does not remove liability for breach of existing common law duties. Compare *Bowerman* v. *Hamner*, 250 U. S. 504, 510–11; *Yates* v. *Jones National Bank*, 206 U. S. 158, 178; *Mechanics Universal Joint Co.* v. *Culhane*, 299 U. S. 51, 57.

*Third.* No order of the court limited the common law duty of Howard to exercise care in the custody of estate funds. The Phillip Bank was designated as a depository on its own application. No order directed Howard to deposit funds in the Phillip Bank; and no order specifically authorized him to do so. Being free to select any one or more of the designated depositories, Howard was in respect thereto under the common law obligation to exercise care in the performance of his functions as a fiduciary. While he was making deposits in the Phillip Bank there were about twenty others in the Chicago area which were designated depositories, so he had a wide range from which to choose. By designating the Phillip Bank as a depository the court may have justified Howard in assuming that on August 20, 1930, it was a trustworthy

---

[4] See *Delafield* v. *Barret*, 270 N. Y. 43, 48–49; 200 N. E. 67; *Matter of Flint*, 240 App. Div. 217, 225; 269 N. Y. S. 470; *Matter of Blake*, 146 Misc. 780; 263 N. Y. S. 310; *Matter of Frazer*, 150 Misc. 43; 268 N. Y. S. 477; *Matter of Jacobs*, 152 Misc. 139, 141–42; 273 N. Y. S. 279; *Estate of Allis*, 191 Wis. 23, 31–32; 209 N. W. 945; 210 N. W. 418.

place of deposit for bankruptcy funds to the extent of $50,000. But throughout the period of deposit the legal duty to exercise care remained. If at any time he discovered facts tending to show that the place of deposit was no longer safe, it was his duty to bring the facts to the attention of the court.[5] And at no time was Howard justified in maintaining a deposit not entirely secured by the depository bond if he had reasonable cause to doubt the stability of the bank.

*Fourth.* The contention that the Bankruptcy Act established a depository system which relieved trustees and receivers wholly of the duty of exercising care as to the condition or stability of a depository rests upon false analogy. For federal public funds Congress has provided a depository system by which the moneys, as soon as deposited are in effect in the Treasury of the United States. 31 U. S. C. §§ 476–478, 495; 12 U. S. C. §§ 391, 392. Under that system an officer who has duly made the deposits is relieved of all responsibility for the stability of the depository. Similar provision has been made in many States for the deposit of public funds of the state or municipality.[6] But the funds of bankruptcy estates are private funds, see *Texas & Pacific Ry. Co.* v. *Pottorff,* 291 U. S. 245, 257, note 11; and the provisions in the

---

[5] Compare *Jordon* v. *Baker,* 252 Ky. 40, 49; 66 S. W. (2d) 84; *Zimmerman* v. *Coblentz,* 170 Md. 468, 476; 185 Atl. 342.

[6] In a number of States statutes specifically relieve public officers of liability if the funds entrusted to them are deposited in the manner provided by law. Some courts hold that in the absence of such a provision the mere fact that the funds are placed in a duly designated depository is not a complete defense; and that if the officer acquires knowledge of facts which show the bank to be unsafe, he may be held responsible if he fails to have the funds removed. *Independent School Dist.* v. *Flittie,* 54 S. D. 526; 223 N. W. 728; *Lane Independent School Dist.* v. *Endahl,* 55 S. D. 73; 224 N. W. 951; *Cozad* v. *Thompson,* 126 Neb. 79; 252 N. W. 606; see *Jordon* v. *Baker,* 252 Ky. 40, 49; 66 S. W. (2d) 84.

Bankruptcy Act concerning the appointment of depositories and the deposits to be made by trustees are of a very different character.

As the exercise of ordinary care in making and maintaining deposits, even if made in a designated depository, was part of Howard's official duties, he and his surety are liable on the bonds if he failed in this respect. On that issue the evidence—particularly in view of the personal loans to him—was ample to justify submitting the question to the jury. The judgment of the Circuit Court of Appeals is, therefore, reversed; and the cause is remanded to it for consideration of the other errors which the defendants assigned concerning the conduct of the trial.

*Reversed.*