**UNITED STATES ex rel. WILLOUGHBY et al. v. HOWARD et al.**

No. 5756.

Circuit Court of Appeals, Seventh Circuit.

May 9, 1938.

Rehearing Denied June 2, 1938.

George B. McKibbin, Walter E. Beebe, and Hamilton K. Beebe, all of Chicago, Ill. (Charles S. Pratt, of Chicago, Ill., of counsel), for plaintiffs-appellees.

Julius Moses, Lloyd Heth, and William P. Smith, all of Chicago, Ill., for defendants-appellants.

Before MAJOR and TREANOR, Circuit Judges and SLICK, District Judge.

MAJOR, Circuit Judge.

Three suits at law were brought in the court below by appellee, acting in his capacity as trustee in bankruptcy of 114 bankrupt estates, and as receiver in bankruptcy of 9 other bankrupt estates against appellant Howard, upon his official bonds as trustee and receiver in bankruptcy of said estates, and against appellant Continental Casualty Company as surety upon all of said official bonds. By agreement, the suits were consolidated, and, after trial, judgment was rendered in each for appellee.

For ten years Howard was receiver and trustee of numerous bankrupt estates. Prior to the middle of 1930, bankruptcy funds were kept by him on deposit in the Central Trust Company of Illinois and in the Foreman State National Bank of Chicago. Prior to July, 1930, and over a period of many years, Howard conducted the banking business of his estates at the former bank with Clarence A. Beutel, one of its vice presidents. About that time, Beutel advised Howard that he had recently become president of the Phillip State Bank & Trust Company of Chicago, and requested Howard to deposit his bankruptcy funds in that bank. Upon being advised that the latter bank would extend him the same loan facilities as had been extended at the banks where he was doing business, he agreed to so do. In the meantime, the Phillip State was designated by the District Court as a depository, and, as such, had filed a bond approved by the court in the sum of $50,000. In August of that year, Howard opened 33 estate accounts in said bank and deposited an aggregate amount of $249,968.15. In the meantime, this bank loaned Howard $11,000 which was used, together with other funds, in discharging his personal obligation to the Central Trust in the amount of $2,500 and the Foreman Bank in the amount of $7,500. Howard also opened with the Phillip Bank two commercial accounts known, respectively, as the "Sam Howard Account" and the "Sam Howard Special Account." The first was an office account used to meet expenses incurred in the various bankrupt estates. In it were deposited all moneys paid Howard upon order of the bankruptcy court as reimbursement for personal advances made to the estates in paying estate expenses, and also money borrowed by him from the bank. The special account was used as a depository account for commissions allowed Howard by the court for his services in administering the estates. The money in these accounts varied at various times from one to $8,000, and when the bank closed, Howard had on deposit in the two accounts $5,853.63. Howard became further indebted to the bank at various times until the total amount of these loans was $17,500 at the time the bank closed. The amount of bankruptcy funds kept on deposit in the Phillip State varied, and on July 21, 1932, when the bank closed, the aggregate amount on deposit was $416.833.90.

Inasmuch as the case has heretofore been before this court, Howard v. United States, 7 Cir., 87 F.2d 243, 244, where may be found a rather full statement of the facts, we do not deem it necessary to go into further detail. Many errors were assigned on the former appeal, but inasmuch as this court held that the trial court should have directed a verdict for the defendants on the ground that there was no breach of the conditions of the bond and no liability for his official acts where the bankruptcy funds were deposited in a bank properly designated by the court for that purpose, the Supreme Court granted appellee's petition for a writ of certiorari, and, after a hearing, reversed the decision of this court and remanded the case for a hearing on alleged errors not disposed of by our former decision. United States ex rel. Chester A. Willoughby, Trustee, Petitioner, v. Sam Howard et al., 302 U.S. 445, 58 S.Ct. 309, 310, 82 L.Ed. ——. As there stated by the court in the first paragraph of its opinion: "The question for decision is whether a trustee (or receiver) in bankruptcy and the surety on his official bond can be held liable for the loss resulting from the insolvency of the bank in which the estate's funds were deposited, if it was one of the depositories designated by the court under U.S.C., title 11, § 101, 11 U.S.C.A. § 101."

Notwithstanding appellee's contention that many of the errors now urged by appellants were decided by the Supreme Court, a study of the opinion convinces

896

us that the only question decided and the only one the court intended to decide was that Howard's official duties required that he exercise ordinary care in making and maintaining the deposits in question, even if made in a designated depository, and that he and his surety are liable on the bonds if he failed in this respect. The court says "On that issue 'the evidence— particularly in view of the personal loans to him—was ample to justify submitting the question to the jury." The cause was remanded to us "for consideration of the other errors which the defendants assigned concerning the conduct of the trial." Inasmuch as we have come to the conclusion that the case must be reversed for another trial, we deem' it proper that we express our views upon the more important of the numerous errors assigned. They chiefly have to do with the admission of evidence, the refusal to admit evidence, the remarks of the court during the trial, and the court's charge to the jury.

■ The first assigned error to which we will direct our attention has to do with the admission of testimony relative to the personal loans made to Howard by the Phillip State Bank and the exclusion of evidence offered by appellants to explain the nature of the loans by showing that Howard borrowed the money exclusively for the purpose of making advances to the respective bankruptcy estates, in accordance with an established practice of trustees and receivers in bankruptcy. As before stated, the bank loaned Howard numerous sums of money in the aggregate of $17,500 on his personal notes. It seems to be appellee's contention that, by reason of these personal loans, Howard had placed himself in a position where his personal interest conflicted with his duty as trustee to such an extent that he was no longer possessed of the discretion to exercise ordinary care in the preservation of bankruptcy funds. Cases cited in support of this position are not as conclusive as appellee would have us believe. The general rule seems to be as stated in Booth v. Greer Inv. Co., D.C., 52 F.2d 857, on page 860, where the court, said: "There is a well-established rule in equity that trustees and all other fiduciaries are forbidden from dealing in their own behalf with respect to matters involved in the trust, and this prohibition operates irrespectively of the good faith, or bad faith, of such fiduciaries. It was the duty

of the trustees of the trust estate not to accept any position or enter into any relation inconsistent with the interest of the fiduciary relation which they occupied."

■ While the Supreme Court did not pass upon the propriety of this evidence, yet, from the language heretofore quoted, it would seem that the court considered it material. At any rate it is our view that these transactions unexplained might have a very material bearing upon the question involved. We think, however, the court erred in refusing appellants the right to explain the reason for such loans and the purpose for which the money obtained thereby was used. The proffered testimony was to the effect that the amounts borrowed were solely for the benefit of the estates, and that for many years it was the uniform practice prevailing in the Northern District of Illinois and approved by the bankruptcy court of such district. To permit appellee to make proof of these personal loans and deny to appellants the right to make an explanation of the reason and purpose of the same, was, in our opinion, calculated to mislead, if not prejudice, the jury. Giving due weight to the duty which devolves upon a trustee or receiver in handling funds intrusted to his care for the benefit of the trust, rather than his own personal benefit, we think the most that can be said of the instant situation is that evidence of such loans, together with the explanation therefor, was merely one of the circumstances which the jury was entitled to consider in arriving at a conclusion as to whether Howard exercised ordinary care in the preservation of the funds intrusted to his care. These loans were designated by the court "as an intolerable sort of thing, which nobody could give any sanction to." The jury was told that it was "utterly repugnant as to what the situation permitted; not only under the law, but upon any sort of a test of propriety permitted either to the bank or to the trustee. * * * That it was improper, for the reason that it fettered the trustee in discharging his trust obligations." Other language equally condemnatory was used, which was calculated to cause a jury to conclude that appellant, by reason of these loans, had gotten himself into a situation where it was impossible for him to exercise the necessary degree of care. Disclaiming any intent to defend or justify such a practice, yet we think that

whether such conduct would preclude appellant from the faithful performance of his duty was purely a question of fact, and that the jury should have been permitted to make such determination for itself.

Error is also assigned to the admission of evidence offered by appellee that other bankruptcy depositories existed in the district during the period in question, without requiring appellee to establish the relative solvency and stability of such banks, and exclusion of evidence offered by appellants showing the amount of the bankruptcy funds on deposit in other depositories. Under the language used by the Supreme Court in its opinion in this case, we are of the opinion that the evidence of other designated depositories was properly admitted, and we believe its admission was not dependent upon a showing of the financial condition of these various depositories. The offer of proof by appellants of the comparative security of the other depositories was properly refused. We do not see how Howard can free himself for the neglect charged by a showing that he would have been equally negligent or more so if the money had been placed in some other depository. Especially was this proffered testimony inadmissible in view of the fact that it was merely attempted to show what was afterwards learned regarding their condition. If Howard, during the time he kept these funds in the Phillip Bank had made an investigation of other banks with a view of ascertaining if there was a safer depository, that character of testimony would be material as bearing upon the care exercised by him, but as to what he or his counsel learned regarding the other banks at some subsequent time, could not be material.

It is also claimed the court erred in the admission of evidence offered by appellee showing the comparison per month between estate deposits made by Howard at the Phillip State Bank and various assets and liabilities of the bank, without any proof that Howard knew, or by the exercise of reasonable diligence could have known, the facts upon which such comparison was based. We think this assignment is without merit. Howard testified that he saw many statements published by the state auditor as required by Illinois law, showing the condition of the bank for the years in question. It would seem that Howard must have known of the situation disclosed by the evidence thus objected to, but, if not, it is certain that he could have had such information by the exercise of reasonable diligence. He had notice of facts designed to put a man of ordinary prudence on inquiry under similar circumstances.

The next error assigned is the exclusion of evidence offered by appellants to show that the reason for the closing of the Phillip State Bank was the repudiation by the Central Republic Bank & Trust Company of an agreement to advance the funds which the Phillip State might require in meeting the "run" which closed the bank and the charge to the jury to disregard all evidence that the Central Republic would advance funds to the Phillip State in case of need. It seems there was some character of agreement between the Central Republic Bank & Trust Company and the Phillip Bank by which the former agreed to furnish the latter funds when needed. Great stress is laid by appellee upon the fact that on three different occasions the Phillip State was subjected to a "run" or a rapid withdrawal of deposits and that this, in itself, was sufficient to place Howard on guard, and, in fact, bring home to him the instability and unsafety of the bank. We are unable to agree with this contention. There is some evidence in the record (but without such evidence, this court will take judicial note of the fact) that, during the time involved, banks of all kinds, large and small, weak and strong, were closing their doors. There was a bank panic of tremendous proportions, and it cannot be said, as a matter of law, that a "run" on a bank was any evidence of its insolvency. In the instant case, there were three "runs" prior to the one which resulted in the bank closing, all in a comparatively short time. Howard had been advised by the officers of the Phillip Bank to the effect that the Central Republic Bank would come to its rescue when needed, and as a matter of fact, on the occasion of the first "run," it put up $1,000,000, on the second, $500,000, and on the third a similar amount, which amounts on each of said occasions enabled the Phillip Bank to remain open. In place of being evidence of a weakened condition, the fact that a bank of this size had another and larger bank which came to its rescue to the extent of $2,000,000 is evidence of strength rather than weakness,

and would, no doubt, make a strong appeal to a depositor of the latter and have material bearing upon the question with which Howard was confronted. We do not believe, however, that the proffered testimony as to why the Central Republic refused to advance the funds to enable the Phillip Bank to withstand the last "run" is material. What happened at that time had no bearing upon the care or lack of care which Howard exercised prior thereto in keeping the funds in the bank. The court, in effect, told the jury to ignore the relationship between the Central Trust and the Phillip State. This constituted error of a serious nature. Notwithstanding the fact that this relationship was calculated to implant confidence in the depositors of the Phillip State, including appellant Howard, the jury was told, in effect, to ignore such testimony.

Complaint is made of the exclusion of evidence offered by appellants purporting to show that Howard filed in the District Court a report dated June 9, 1931, showing the amount which Howard had on deposit in various banks, including the Phillip Bank. This exhibit should have been admitted. Appellee contends that it was not filed under any order of court; but we think this is immaterial. Of course, Howard cannot shift responsibility by showing that the court or other officers of the court had knowledge of the situation, but it seems to us testimony as to disclosures made to the court by Howard in whatever form would be admissible as a material circumstance.

We likewise conclude there is merit in the complaint that the court refused to allow counsel for appellants in arguments to the jury to make reference to the general banking situation as it then existed. The situation was a matter of common knowledge, and we think it was one not only which counsel were entitled to refer to, but one which the jury might properly take into consideration. It seems certain to us that ordinary care might well depend upon the conditions and circumstances existing in the banking field. Can any one doubt that the difficulty facing a bank depositor is far greater in times of adversity? It is a rather simple matter to point out, as appellee here does, what should have been done to free one from negligence, but such suggestions proceed on the theory that a man's foresight is equal to his hindsight, which happens not to be true.

Error is assigned on the following paragraph in the court's charge: "Now, if upon a careful survey of all of this evidence, you feel that this bank was in a safe condition, and that there was nothing there that indicated the necessity of regarding it as involving hazards, great hazards to the trust funds, and that the defendant Howard knew of nothing that would challenge his right to continue not only to deposit, but to increase the deposits in the light of all the evidence here, as developed, your verdict in this case should be for the defendants."

Appellee does not defend this part of the charge as containing an accurate statement of law, but calls our attention to the succeeding paragraph, and insists that, considering the two paragraphs together, as well as other portions of the charge, no harm was done. We do not agree in this respect. The paragraph referred to advises the jury when it would be authorized in finding for appellants and enumerates conditions which would make such a result impossible.

In conformity with the remanding order of the Supreme Court, we have considered the various errors assigned. The cause is reversed for a new trial not inconsistent with the views herein expressed.

Reversed.