E. V. Townshend, *Trustee, etc. v.* George Ward, *Commissioner of Banking, et al.*

(No. 8739)

Submitted October 25, 1938.   Decided November 22, 1938.

*Okey P. Keadle,* for appellant.
*Marcum & Gibson,* for appellees.

Kenna, Judge:

This is a chancery proceeding from the Circuit Court of Cabell County in which E. V. Townshend, trustee in bankruptcy of R. R. Smith, bankrupt, was the complainant, and George Ward, Commissioner of Banking of West Virginia, and F. O. Lamb, receiver of Huntington Banking & Trust Company, were defendants. The purpose of the proceeding was to recover, as a constructive trust fund in the hands of Lamb, receiver, monies which were deposited by the trustee in bankruptcy in that in-

stitution prior to its receivership, to the extent that the deposits referred to, along with prior deposits of the same nature, exceeded the penalty of the depository bond of fifty thousand dollars. The trial chancellor, upon final hearing, dismissed complainant's bill.

The bill of complaint alleges that complainant, E. V. Townshend, trustee in bankruptcy of R. R. Smith, bankrupt, was elected on September 5, 1933, to succeed F. C. Leftwich, who had been chosen in January, 1932; that Huntington Banking & Trust Company was, on March 1, 1918, designated as a depository for bankruptcy funds by the District Court of the United States for the Southern District of West Virginia; that the order of designation included also an amendment to Rule Forty, which is set forth verbatim, reading in part as follows: "In the event the amount on deposit in any designated depository exceeds the amount of the bond as above, the bank shall at once increase its bond to cover said excess." The bill goes on to allege that the depository bond of Huntington Banking & Trust Company was first fixed at ten thousand dollars but that on April 3, 1931, having theretofore accepted bankruptcy deposits far exceeding the amount of its depository bond, it gave an additional bond in the amount of forty thousand dollars.

The bill further alleges that F. C. Leftwich, who was the first trustee in bankruptcy of R. R. Smith, bankrupt, was, at the time, a stockholder, director and member of the executive committee of Huntington Banking & Trust Company, and was also one of the sureties upon the forty-thousand-dollar depository bond, which positions he held until the bank closed on April 8, 1933, and for that reason Leftwich should have been aware of the insufficiency of the depository bond when he made the deposits.

The bill alleges that on the last-named date the Huntington Banking & Trust Company closed its doors because of depleted reserves, and that the then Commissioner of Banking took over its assets, including the deposits of plaintiff's predecessor and other trustees in

bankruptcy, and on May 31, 1933, appointed defendant, F. O. Lamb, receiver of that bank.

. The bill sets forth that at the time the receiver was appointed, investigation of the affairs of the bank disclosed that it was insolvent. It is not averred, however, that Leftwich, trustee, at the time the deposits were made, knew or by the exercise of reasonable diligence should have known of the bank's insolvency.

At the time the bank was closed, according to the allegations of the bill, it had on deposit in the accounts of trustees in bankruptcy, including the amount to the credit of plaintiff, the aggregate of eighty-four thousand, nine hundred seventy-nine dollars and three cents, which exceeded the amount of its two depository bonds by thirty-four thousand, nine hundred seventy-nine dollars and three cents. This is a specific allegation, naming the depositors and the amount of their balances.

It is alleged that on or about September 1, 1932, the bank held on deposit by trustees in bankruptcy the aggregate amount of its two depository bonds, including the sum of sixteen thousand, two hundred nine dollars and seventy-six cents in the name of Leftwich, trustee of R. R. Smith.

It is also alleged that in addition to the sum of fifty thousand dollars deposited by trustees in bankruptcy and comprising the amount of the bank's depository bonds, it had on deposit by Leftwich, trustee for R. R. Smith, the sum of thirty-three thousand, four hundred six dollars and sixty-nine cents. This is the amount sought to be recovered.

The bill states that the last named sum was accepted by the bank not only after the security of its depository bond had been exceeded, but after "the authority of the designation of said bank to receive bankruptcy funds had been exceeded."

The bill alleges that the amount of thirty-three thousand, four hundred six dollars and sixty-nine cents in excess of the aggregate of the bank's depository bonds and in excess of the bank's authorization to receive bank-

ruptcy funds constitutes a trust fund, and prays for a decree directing the defendants to pay that amount to complainant.

Respondents filed three special pleas to complainant's bill.

Special plea number one was a plea of *res adjudicata* alleging that the complainant on the twenty-fifth day of September, 1933, filed his petition in the United States District Court for the Southern District of West Virginia there seekng a recovery on the same ground that he seeks recovery in this cause, and that the defendants, in addition to moving that his petition be dismissed on jurisdictional grounds, set up the same defences that they are relying upon here; that the United States District Court decided in favor of the petitioner and that upon appeal to the United States Circuit Court of Appeals for the Fourth Circuit, the order of the District Court was reversed. A demurrer to this special plea was sustained because the Circuit Court of Appeals had reversed the order of the *nisi prius* court because of lack of jurisdiction, the entire record having been exhibited with the special plea.

The defendants' special plea number two sets forth accounts aggregating four hundred and seventy-nine thousand, fifteen dollars and ninety-four cents of trusts or preferred charges upon the assets of Huntington Banking & Trust Company in the hands of Lamb, receiver, and alleges that an order in this cause directing the receiver to pay in full the amount herein sought to be recovered would constitute an unwarranted prejudice to those entitled to the trust preferences named in the plea. The complainant filed a written demurrer to this plea, assigning grounds.

The defendants' special plea number three is based upon the theory that the complainant's deposits are to be classified as general deposits, creating nothing more than the relationship of debtor and creditor which precludes their constituting a constructive trust. The complainant de-

murred to this plea, assigning as ground that the allegations of the plea amount only to a conclusion of law.

The trial court, without further mentioning the demurrer to defendants' special plea number two or that to their special plea number three, neither of which had been ruled upon, upon final submission after proof was taken, found that the plaintiff was not entitled to the relief prayed for, and dismissed the bill of complaint.

It is not contended that the subject of this controversy consisted of deposits of government money, either federal, or state or of a subdivision of the state. The deposits of a trustee in bankruptcy are personal and general deposits. Their classification is not altered, in whole or in part, by the fact that their amount exceeds the penalty of the depository bond. This does not change their nature to that of public funds. See as bearing upon this question *United States ex rel. Willoughby* v. *Howard*, 302 U. S. 445, 453, 58 S. Ct. 309, 82 L. Ed. 352; *Bowne et al.* v. *Lamb*, 119 W. Va. 370, 376, 193 S. E. 563, 566. A careful reading of these cases will differentiate a number of cases cited in complainant's brief, which we think it unnecessary to comment upon severally. Cases which involve the deposit of well recognized public funds, we think, for various reasons, are not in point, an example of which is the holding in *Monongalia County Court* v. *Bank*, 112 W. Va. 476, 164 S. E. 659.

The Bankruptcy Act does not require a designated depository for bankruptcy funds to refrain from accepting for deposit bankruptcy funds in an amount which exceeds the penalty of its depository bond. Neither does any rule or order of the United States District Court for the Southern District of West Virginia disclosed in this record do so. To the contrary, section sixty-one of the Bankruptcy Act apparently anticipates that the sum total of the bankruptcy deposits in the hands of a depository will occasionally exceed the penalty of its depository bond. The time during which these deposits are held greatly fluctuates, and this provision of the Bankruptcy Act empowers the United States District Court to increase the

amount of the depository bond, thus by implication justifying deposits that make that necessary. The rule which the United States District Court for the Southern District of West Virginia promulgated by its order designating the depositories, contains this provision: "In the event the amount on deposit exceeds the amount of the bond as above, the bank shall at once increase its bond to cover said excess." To our minds, a plain reading of this provision shows that the court's expectation was that these designated depositories would occasionally receive deposits that in the aggregate exceeded the penalty of its depository bond. This rule was laid down to take care of that eventuality when and if it should arise, but the fact that the only circumstance that the rule mentioned which necessitated the increasing of the penalty of the depository bond was the fact that the amount on deposit should exceed the amount of the bond at that time shows that such a happening was expected occasionally to occur and, while it was to be promptly remedied, its occurrence was not disapproved. The United States district judge required the Huntington Banking & Trust Company to give an additional bond in quadruple the amount of the bond then in effect, but permitted the bank to continue to receive bankruptcy deposits and to retain those that it had received in excess of the penalty of its depository bond. We are confident that the United States district judge would not have pursued this course, if, in his opinion, the bank had exceeded its authority conferred by its designation by accepting the deposit of bankruptcy funds in excess of the penalty of its depository bonds. Of course, there could be times when the bookkeeping entries of the bank disclosed that its bankruptcy deposits had exceeded the amount of its depository bonds, and at the same time the trustees' simultaneous withdrawals would make this largely a matter of mere bookkeeping. The referees in bankruptcy could keep the federal judges advised so that these matters could be handled in a manner most beneficial to all concerned. They rest upon diligence.

The funds of a bankrupt, subject only to the expenses of the bankruptcy proceeding, are for a proper distribution among the creditors of the bankrupt. So are the assets of an insolvent state banking institution. There is no reason that we can perceive for preferring the creditors of a bankrupt to those of an insolvent state banking institution solely because the cash assets of the estate have been on deposit in a bank designated by the United States District Court. This, to our minds, would constitute a preferential prejudice against those with money on deposit in an institution that the state itself has designated as a lawful depository.

Based upon the foregoing reasons, the decree of the Circuit Court of Cabell County dismissing the plaintiff's bill is affirmed.

*Affirmed.*