**In re BREGER KOSHER SAUSAGE CO.**
**EMPIRE PACKING CO. v. TUDOR.**

No. 7911.

Circuit Court of Appeals, Seventh Circuit.

May 21, 1942.

Rehearing Denied July 16, 1942.

Edward J. Rothman and Max Chill, both of Chicago, Ill., for appellant.

Donovan Y. Erickson and George A. Lane, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellant appeals from an order denying its objections to the report of a referee in a bankruptcy proceeding, and approving and confirming the report. The report approved the first, second, and final reports and accounting of the trustee, which reports covered his operations under a state court receivership authorized to operate the business of the bankrupt, and under the bankruptcy proceeding. Appellant, an unsecured creditor, filed its objections by which it sought to have appellee surcharged for losses incurred during his operation of the business, and alleged to have resulted from his negligence and inefficient management.

On January 19, 1939, suit was filed in a state court against the Breger Kosher Sausage Company for the purpose of liquidating the corporation which was engaged in the business of manufacturing sausage. Appellee was appointed receiver to conserve assets, and authorized to continue operation of the business as a going concern. On January 20, three creditors (not including appellant) filed their petition asking that the the corporation be adjudged a bankrupt, and it was so adjudicated on April 6. Appellee was appointed trustee in bankruptcy May 3, and authorized by the bankruptcy court to continue operation of the business on May 11, upon his petition stating that the great majority of the creditors deemed it advisable not to liquidate the assets at that time, but to endeavor to continue it until a purchaser could be procured for it as a going concern. He was also granted leave to retain certain named employees at specified salaries, and to set up and main-

tain a petty cash fund of $300. The business was sold under order of the court on July 6, 1939.

On July 1, 1940, appellee filed his final report and account, to which appellant filed amended objections on November 7, contending that appellee failed to report to either the state court or the bankruptcy court the fact that he was operating the business with very heavy losses, amounting to approximately $1,000 a month during the period of his operations, according to its calculations. It also contended that appellee made no attempt to collect a certain account receivable amounting to $690 which should therefore be surcharged to him. Appellant also prayed that no fees be allowed to appellee as trustee in bankruptcy and that the amounts allowed one Waldbillig, appointed by him to supervise the business of the bankrupt, be disallowed.

The referee conducted a very searching inquiry into the operations of the business by appellee during the period when he was acting under orders of the state court and after his appointment as trustee in bankruptcy. He admitted all the evidence that was offered as to such operations, stating that there were facts that struck him as strange, and that it was better for all parties if they were explained. This evidence did show that very large losses were incurred under appellee's stewardship; that the methods of bookkeeping were not of the best; that Waldbillig, the manager employed by appellee to run the factory, had had no previous experience in such a business and that during his employment by appellee he opened up a retail outlet with money borrowed from appellee, and after the sale of the bankrupt's estate, he and the two principal stockholders of the bankrupt went into the business of manufacturing sausage with money largely borrowed by him from appellee without security. From such facts appellant sought to show that appellee occupied antagonistic interests, and that he was concealing an interest in the successor corporation through Waldbillig. It also sought to show actual shortages in appellee's accounts.

Having heard all the evidence, the referee concluded that it was not sufficient to support the allegations of appellant's petition pertaining to appellee's stewardship as state court receiver, and that the evidence was also insufficient to surcharge him for any wrongdoing while acting as trustee in bankruptcy. He stated in his report that his jurisdiction was limited by § 2, sub. a(21) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(21),[1] under the provision of which the bankruptcy court could only hold a state court receiver responsible for improvident or unreasonable expenditures made by him in the course of his stewardship. Hence he recommended that the final report be approved and appellant's objections overruled. With respect to the matter of fees, the referee recommended no compensation for appellee, stating that he had waived his claim for such compensation for his services in both courts.

From our study of the record we are convinced that there was no error in the conclusions of the referee as to appellee's liability. Although appellant vigorously asserts that appellee failed to apprise the courts that the business was losing money, it is clear that the petition which resulted in his appointment as state court receiver was based on the insolvency of the corporation, and he asked that court to approve the issuance of a receiver's certificate for $1,000 which certainly did not import that the business was a profitable one.

Furthermore, as his petition for leave to continue operation indicates, it was based

[1] § 2, sub. a(21). "The courts of the United States * * * are hereby invested * * * with * * * jurisdiction * * * to * * * require receivers or trustees appointed in proceedings not under this title * * * to deliver the property in their possession or under their control to the receiver or trustee appointed under this title * * * and in all such cases to account to the court for the disposition by them of the property of such bankrupt * * *. Upon such accounting, the court shall reexamine and determine the propriety and reasonableness of all disbursements made out of such property * * * for services and expenses under such receivership * * * and shall, unless such disbursements have been approved, upon notice to creditors and other parties in interest, by a court of competent jurisdiction prior to the proceeding under this title, surcharge such receiver * * * the amount of any disbursement determined by the court to have been improper or excessive."

on the decision of a great majority of the creditors whose judgment it was that there be no liquidation at that time, but that the business be continued until opportunity was afforded to procure a purchaser for it as a going concern. In view of the nature of the business, such continuation seems much more reasonable than for it to be closed down. It must be remembered that the subject of the stewardship was a corporation dealing in perishable products, which had to be taken care of at once. The business was only continued from January 19, to July 6, less than six months. True it is that the final result of the operation was disastrous financially in that expenses of administration amounted to more than total receipts from the operation of the business and from the sale of the business itself. Hence hindsight might advise the liquidation of the business immediately. However, though losses were so large as to indicate the unwisdom of continuing the business, we cannot say that the referee who heard all the evidence erred in concluding from it that there was no culpable neglect or misconduct on appellee's part. It does not seem so strange that a new manager taking over an insolvent business and operating it less than six months should incur serious losses.

■■ The general rule is that receivers are not chargeable with losses resulting from their operation of a business, although it is their duty to exercise diligence in selecting competent employees and informing themselves as to the profits and losses from such operation. See Remington on Bankruptcy (4th Ed.) §§ 446, 2662, and 2965. The degree of diligence exercised, we think, is a matter for the bankruptcy court to determine, and our inspection of the record convinces us of the painstaking care with which the referee conducted his inquiry.

■ As to the charge of antagonistic interests, appellant relies upon United States v. Howard, 7 Cir., 96 F.2d 893, 896, where this court quoted the rule "'that trustees and all other fiduciaries are forbidden from dealing in their own behalf with respect to matters involved in the trust, and this prohibition operates irrespectively of good faith, or bad faith, of such fiduciaries. It was the duty of the trustees of the trust estate not to accept any position or enter into any relation inconsistent with the interest of the fiduciary relation which they occupied.'" Here again, it was the

duty of the referee to hear all the evidence relating to the charge, and unless he found facts supporting the allegation, of course he could not hold appellee liable on it. We find no error in his conclusion that the evidence did not support the allegations.

Decree affirmed.