MUNICIPAL ENERGY AGENCY OF MISSISSIPPI, Plaintiff-Appellant,

v.

BIG RIVERS ELECTRIC CORPORA-TION, Defendant-Appellee.

No. 86–4479
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1986.

See also, 645 F.Supp. 20.

Hunt, Spell & Henson, David R. Hunt, Clarksdale, Miss., Gerald, Brand, Watters, Cox & Hemleben, Jack W. Brand, Scott P. Hemleben, James Kenneth Harmon, Jackson, Miss., for plaintiff-appellant.

Alex A. Alston, Jr., Jackson, Miss., Holbrook, Gary, Wible & Sullivan, Morton Joshua Holbrook, Lizabeth Ann Tully, Allen Woodrow Holbrook, Owensboro, Ky., for defendant-appellee.

Before CLARK, Chief Judge, GARWOOD, and HILL, Circuit Judges.

CLARK, Chief Judge:

The district court stayed the declaratory judgment action of the Municipal Energy Agency of Mississippi (MEAM) against Big Rivers Electric Corporation (Big Rivers) pending arbitration. The district court also refused to enjoin Big Rivers from proceeding in another U.S. district court with a petition to compel arbitration. MEAM appeals from the orders. We affirm.

## I.

MEAM is a joint agency of the State of Mississippi formed by several Mississippi cities to provide electric power. On June 1, 1984, MEAM entered into a Power Supply Agreement with Big Rivers, a Kentucky Rural Electric Cooperative. MEAM agreed to purchase 50 megawatts of electric power from Big Rivers from June 1, 1984, through September 30, 1984, at the rate of 85 cents per kilowatt per week. For power supplied from October 1, 1984, through September 30, 1995, the rate increased to $11.55 per kilowatt per month.

Big Rivers could not supply the power directly to MEAM because the transmission systems of Big Rivers and MEAM do not interconnect. Big Rivers' system interconnects with the system of the Tennessee Valley Authority (TVA). MEAM's system interconnects with the system of Mississippi Power & Light Co. (MP & L), which interconnects with TVA's system. The Agreement therefore required MEAM to contract with MP & L and Big Rivers to contract with TVA for transmission services for the ten years beginning October 1, 1985. If the necessary transmission agreements were not reached, the Power Supply Agreement would terminate. The relevant portion of the termination provision reads as follows:

### SECTION 9—CONDITIONS OF TERMINATION:

This agreement shall terminate in its entirety, unless otherwise agreed to in writing, and be without further force and effect without any liability of either party hereto to the other (except for the obligation to make payments for any power supplied prior to such termination for which payment has not been made) in the event the parties are unable through no fault of their own in completing on or before October 1, 1985, the following:

1. Firm transmission services sufficient to transmit the contracted power during the full term hereof are secured by Big Rivers and MEAM, as follows:

Big Rivers will obtain the required commitment for firm transmission services from the Tennessee Valley Authority and MEAM will acquire the required transmission services from Mississippi Power and Light Company (MP & L).

The Power Supply Agreement also contained the following arbitration clause:

### SECTION 4—ARBITRATION:

To the extent permitted by law applicable to MEAM and in force and effect at the time there arises any controversy, claim, counterclaim, defense, dispute, difference or misunderstanding arising out of or relating to this agreement or breach thereof, such controversy, claim, counterclaim, defense, dispute, difference or misunderstanding shall be settled by arbitration to be conducted in accordance with the following procedure. MEAM shall select one arbitrator, Big Rivers shall select one arbitrator, and the two arbitrators appointed by MEAM and Big Rivers respectively shall select a third arbitrator. The arbitration shall be conducted in accordance with the rules of the American Arbitration Association then in effect, and judgment upon any award rendered by the arbitrators may, if permitted by law, be entered in any court having jurisdiction thereof. This provision shall survive the termination of this agreement. The parties expressly agree that this provision shall constitute a condition precedent to the institution of any proceedings in any court relating to the subject matter thereof.

MEAM and Big Rivers both entered into their respective agreements before October 1, 1985, and MEAM paid the higher rate for the electricity supplied by Big Rivers. In March 1986, however, MEAM received a copy of the transmission agreement between Big Rivers and TVA and determined that the agreement failed to satisfy the Power Supply Agreement. On March 28, 1986, MEAM notified Big Rivers that it considered the Power Supply Agreement terminated because the transmission agree-

ment between Big Rivers and TVA allowed either party to terminate the agreement on three years notice MEAM also stopped purchasing power from Big Rivers.

MEAM filed the present declaratory judgment action on April 2, 1986, in the United States District Court for the Northern District of Mississippi. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. MEAM sought a declaratory judgment that the Power Supply Agreement had terminated and sought repayment of amounts it paid to Big Rivers after October 1, 1985 in excess of 85 cents per kilowatt per week. On April 17, 1986, Big Rivers filed in the United States District Court for the Western District of Kentucky a petition to compel arbitration against MEAM pursuant to 9 U.S.C. § 4. On April 18, 1986, Big Rivers filed a motion to dismiss in the Mississippi action under Federal Rule of Civil Procedure 12(b)(6). In the alternative, Big Rivers moved the Mississippi court to stay the proceedings pending arbitration pursuant to 9 U.S.C. § 3. MEAM then sought to have the Mississippi district court enjoin Big Rivers from proceeding in the Kentucky action by motion dated June 5, 1986, on the ground that the issues in the two actions were the same and the Mississippi action was filed earlier. In its June 5 motion MEAM also asked the district court to expedite hearing on all motions then pending.

On June 6, 1986, the Mississippi district court concluded that "the issue of contract termination falls within the scope of the arbitration clause of the parties' contract, and is, thus, referable to arbitration." It granted Big Rivers' motion to stay pending arbitration and denied MEAM's motion to enjoin Big Rivers from proceeding in the Kentucky action. MEAM appeals.

## II.

■ Big Rivers initially challenges the jurisdiction of this court to hear MEAM's appeal. An order granting a stay pending arbitration is not a final order, so it is not appealable under 28 U.S.C. § 1291. *See Jackson Brewing Co. v. Clarke*, 303 F.2d 844, 845 (5th Cir.), *cert. denied*, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962). The order may be appealable under 28 U.S.C. § 1292(a)(1) as an interlocutory order granting or refusing an injunction, but

> only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; and (B) the stay was sought to permit the prior determination of some equitable defense or counterclaim.

*Jackson Brewing Co.*, 303 F.2d at 845 (emphasis and footnote omitted).

Big Rivers' motion based on the existence of a contractual agreement to arbitrate clearly raises an equitable defense. *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 314–15, 79 L.Ed. 583 (1935). However, the dispute here is whether MEAM's cause of action is legal or equitable. We must look behind the declaratory judgment action to determine the form that the action would have taken if the Declaratory Judgment Act were not in existence. *See American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir.1968). Big Rivers characterizes MEAM's suit as seeking "damages based on a reformation of the contract price," and points out that contract reformation is an equitable claim, *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 732 F.2d 444, 445 (5th Cir.1984). MEAM characterizes its action as a suit for breach of contract to recover money damages, which is an action at law, *Coastal Industries, Inc. v. Automatic Steam Products Corp.*, 654 F.2d 375, 377 n. 1 (5th Cir.1981) (Unit B).

■ In this case, however, we do not need to "resort to archaic distinctions between law and equity," *Mar-Len*, 732 F.2d at 446 (Rubin, J., dissenting), because here there is an alternative basis of appellate jurisdiction. MEAM appeals not only the stay but also the district court's denial of

its motion to enjoin Big Rivers from proceeding in the Kentucky action. This order is appealable under 28 U.S.C. § 1292(a)(1). *Cf. A. & E. Plastik Pak Co. v. Monsanto Co.,* 396 F.2d 710, 713 (9th Cir.1968) (denial of motion to enjoin arbitration is appealable); *Petroleum Helicopters, Inc. v. Boeing-Vertol Co.,* 606 F.2d 114, 114 (5th Cir. 1979). Since this denial properly brings the order before us, we can also review the order staying the proceedings pending arbitration. *Mercury Motor Express, Inc. v. Brinke,* 475 F.2d 1086, 1091 (5th Cir.1973). This court has jurisdiction over this appeal.

### III.

#### A.

MEAM's first contention is that it is not obligated to arbitrate the dispute because the arbitration clause terminated along with the rest of the Power Supply Agreement when Big Rivers failed to reach a satisfactory agreement with TVA. MEAM argues that the contractual requirement that Big Rivers enter a long-term agreement with TVA was a condition precedent to the "secondary" ten-year term of the contract, and contends that the termination clause should override the arbitration clause because the termination clause goes "to the heart and substance of the contract." As a result, MEAM concludes, the district court erred in staying the proceeding pending arbitration or, in the alternative, in failing to hold an evidentiary hearing on the proper construction of the provisions of the contract.

■ The issues in this case are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–14, because the contract between MEAM and Big Rivers obviously is "a contract evidencing a transaction involving commerce." *Id.* § 2. In enacting the Federal Arbitration Act, Congress declared a national policy in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984).

Congressional intent was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983). As such, the district court should grant a 9 U.S.C. § 3 application for a stay pending arbitration when the arbitration clause on its face covers a dispute. *Seaboard Coast Line Railroad Co. v. National Rail Passenger Corp.,* 554 F.2d 657, 660 (5th Cir.1977). If the dispute is within the scope of the arbitration clause, the court may not delve further into the merits of the dispute. *City of Meridian v. Algernon Blair, Inc.,* 721 F.2d 525, 528 (5th Cir.1983).

■ The language of the arbitration clause in the Power Supply Agreement is broad enough to cover a dispute over whether the Agreement terminated. The arbitration clause covers "any controversy, claim, counterclaim, defense, dispute, difference or misunderstanding arising out of or relating to this agreement or breach thereof." MEAM does not dispute the broad language of the clause. Rather, MEAM argues that the arbitration clause was no longer binding on the parties at the time the dispute arose.

■ This dispute over contract termination is an arbitrable dispute under the arbitration clause in this case. An arbitration clause is separable from the contract in which it is embedded. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402–03, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). A federal court can only adjudicate challenges to "the making and performance of the agreement to arbitrate," not challenges to the enforceability of the contract as a whole. *Id.* at 404, 87 S.Ct. at 1806. Thus, in *Prima Paint,* the United States Supreme Court held that the district court properly stayed proceedings before it when the party seeking to avoid arbitration did not allege that it was fraud-

ulently induced to enter the arbitration agreement but only claimed that it was fraudulently induced to execute the contract. *Id.* at 406, 87 S.Ct. at 1807.

■ MEAM does not deny that it was bound by the Power Supply Agreement before that Agreement allegedly terminated. It thus necessarily concedes that it was bound by the arbitration clause as well. Because MEAM does not contest the making of the arbitration agreement, its reliance on *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211, 216–20 (S.D.N.Y.1978), is misplaced. Moreover, MEAM's claim that the arbitration clause terminated when the rest of the contract allegedly terminated is contradicted by the express language of the arbitration clause, which provides that "[t]his provision shall survive the termination of this agreement." MEAM does not suggest any meaning of this language other than the obvious. This specific provision controls the more general provisions of the termination clause. *See Western Oil Fields, Inc. v. Pennzoil United, Inc.*, 421 F.2d 387, 389 (5th Cir.1970).

The parties contracted to arbitrate the issue of contract termination. *See Houston General Insurance Co. v. Realex Group, N.V.*, 776 F.2d 514, 516 (5th Cir. 1985). The district court properly stayed its own proceedings pending arbitration. In addition, the unambiguous language of the arbitration clause made it unnecessary for the district court to hold an evidentiary hearing. *Commerce Park v. Mardian Construction Co.*, 729 F.2d 334, 340–41 (5th Cir.1984).[1]

## B.

MEAM's second contention is that the district court erred in refusing to enjoin Big Rivers from proceeding in its Kentucky action to compel arbitration. MEAM argues that the facts and issues involved in the Mississippi action—the circumstances surrounding the making of the contract and the proper interpretation of the contractual provisions—are the same facts and issues involved in the Kentucky action. MEAM finds support in *Dupuy-Busching General Agency, Inc. v. Ambassador Insurance Co.*, 524 F.2d 1275, 1277 (5th Cir. 1975), in which this court considered the effect of the defendant's answer and counterclaim petitioning for an order directing arbitration as a defense to an action on the contract. Asserting that the facts and issues in the two actions are similar, MEAM urges that the district court in the Mississippi action erred by not asserting "paramount jurisdiction" over the motion to compel arbitration in the present proceeding. In letter and spirit, *Dupuy-Busching* is distinguishable.

■ District courts have discretion to enjoin the filing of related lawsuits in other U.S. district courts. *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir.1985). "As between federal district courts, ... the general principle is to avoid duplicative litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (dictum). Often the case filed first will be allowed to proceed. *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 729–30 (5th Cir. 1985). But we will reverse a district court's decision not to enjoin another proceeding only if the district court abused its discretion. *Cowden Manufacturing Co. v. Koratron Co.*, 422 F.2d 371, 372 (6th Cir.), *cert. denied*, 398 U.S. 959, 90 S.Ct. 2173, 26 L.Ed.2d 544 (1970) (finding no abuse of discretion in refusal to enjoin later-filed

---

1. MEAM also asserts that the district court erred in failing to rule on Big Rivers' motion to dismiss. MEAM expressly requested the district court to rule on this motion and the district court declined. Given its actions in staying the proceedings pending arbitration, the district court did not abuse its discretion.

**344**

petition to compel arbitration in another U.S. district court).

■ The district court did not abuse its discretion in refusing to enjoin Big Rivers from proceeding in the Kentucky action. No part of the language of these two sections of the Arbitration Act indicates that a section 4 petition to compel arbitration must be made in an action in which a section 3 motion to stay is made.[2] Indeed, section 4 provides that a petition to compel arbitration may be made in "any United States district court which, save for such agreement, would have jurisdiction under Title 28." 9 U.S.C. § 4.

We find further guidance in the United States Supreme Court's discussion in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Although *Moses H. Cone* involved duplicate federal and state proceedings, we find it equally useful in analyzing the allegedly duplicate federal proceedings in this case. The Court makes clear in *Moses H. Cone* that the section 3 stay and the section 4 order to arbitrate are "parallel devices for enforcing an arbitration agreement." *Id.* at 22, 103 S.Ct. at 940. Moreover, the Court in *Moses H. Cone* rejected an argument that the state action should have been allowed to proceed because it was filed first.

[T]his argument disregards the obvious reason for the Hospital's priority in filing. An indispensable element of Mercury's cause of action under § 4 for an arbitration order is the Hospital's refusal to arbitrate.... That refusal did not occur until less than a day before the Hospital filed its state suit. Hence, Mercury simply had no reasonable opportunity to file its § 4 petition first.

*Id.* at 21, 103 S.Ct. at 939. Similarly, in this case Big Rivers had no reasonable opportunity to file its petition to compel arbitration before MEAM filed its declaratory judgment action in the district court. MEAM did not notify Big Rivers of its intention to treat the contract as terminated until at most five days before filing suit.

The fact that the court in *Dupuy-Busching* treated the answer and counterclaim asserting a section 4 petition to compel arbitration in New Jersey as a compulsory counterclaim does not alter our conclusion. The holding in *Dupuy-Busching* was that a district court in Mississippi could compel arbitration in New Jersey notwithstanding the requirement of section 4 that the hearing and proceedings under the arbitration agreement "be within the district in which the petition for an order directing such arbitration is filed." 524 F.2d at 1278. The characterization of the defendant's an-

2. Section 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

In relevant part, section 4 provides:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

swer and counterclaim as a compulsory counterclaim in that suit was collateral to that holding. The characterization is not controlling here either on a procedural or substantive basis. Procedurally, we note that in *Dupuy-Busching* the defense was presented as part of an answer, whereas in the present case Big Rivers filed a 12(b)(6) motion to dismiss. The time for filing an answer and counterclaim in the present suit had not arrived. In the present case Big Rivers never filed an answer; thus it would not be barred in a subsequent suit from raising any compulsory counterclaim. Fed.R.Civ.P. 13(a); *Lawhorn v. Atlantic Refining Co.*, 299 F.2d 353, 356–57 (5th Cir.1962).

Substantively, the *Dupuy-Busching* court distinguished its holding from decisions of the Third and Ninth Circuits by pointing out that the party invoking the jurisdiction of the district court in the suit before it was seeking to avoid, not enforce, arbitration; whereas, in the other circuit actions, the party seeking arbitration had initiated the action. Therefore, *Dupuy-Busching* could, without conflict, hold that the defensive actions of the party seeking to enforce arbitration did not constitute a waiver of the defendant's right to secure arbitration in another arena. Big Rivers, the party seeking arbitration in the instant action, did nothing in the litigation initiated by MEAM, the party seeking to avoid arbitration, which would invoke the jurisdiction of the Mississippi court or waive Big Rivers' right to arbitrate in Kentucky.

■ Finally MEAM appears to be arguing that because it filed this action in Mississippi, Big Rivers must petition to compel arbitration in Mississippi, and that the Mississippi district court erred when it did not compel the arbitration MEAM seeks to avoid to be held in Mississippi. MEAM hopes its contract action established Mississippi as the forum for arbitration by clarifying the arbitration clause which does not specify the forum in which arbitration is to be held. But MEAM's action is an attempt to avoid its contractual obligation to arbitrate. *See Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984). Indeed, in opposing Big Rivers' section 3 motion to stay pending arbitration, MEAM has asserted that the parties are not bound by the arbitration clause. It would stand reason on its head to allow MEAM to dictate the choice of forum for arbitration by seeking to avoid arbitration. The district court did not abuse its discretion in refusing to enjoin Big Rivers.

The orders appealed from are AFFIRMED.