**CHAUFFEURS, TEAMSTERS & HELPERS, LAKE COUNTY, ILLINOIS, LOCAL 301, et al., Plaintiff,**

v.

**Michael H. HOLLAND, Election Officer, Defendant.**

**No. 89 C 8577.**

United States District Court, N.D. Illinois, E.D.

March 12, 1990.

Sherman Carmell, Adrianne E. Hampo, Carmell Charone Widmer Mathews & Moss, Chicago, Ill., for plaintiff.

Barbara J. Hillman, Melissa Auerbach, Cornfield and Feldman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiffs Chauffeurs, Teamsters & Helpers, Lake County, Illinois, Local 301, et al.,[1] ("the Chicago plaintiffs") filed suit against Michael H. Holland ("Holland"), an election officer appointed pursuant to a consent de-

cree between the United States and the International Brotherhood of Teamsters ("IBT"). The consent decree, entered by the United States District Court for the Southern District of New York (Edelstein, J.) ("the New York court"), provided for extensive changes in the nominating and election procedures for IBT officers. Under the consent decree, no final judgment has been entered. Judge Edelstein retains jurisdiction over the implementation of the consent decree and disputes over its implementation.

The Chicago plaintiffs filed this action directly attacking the New York court's consent decree. The New York court enjoined the Chicago plaintiffs from pursuing this action except to dismiss the complaint. The Chicago plaintiffs have not complied with the New York court's order. Holland moves to dismiss the complaint under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Alternatively, Holland moves to transfer the action to the New York court pursuant to 28 U.S.C. § 1404(a).

Plaintiffs' response to Holland's motion to dismiss was received by the court several days after the filing deadline. By then, the court had dismissed the complaint because of plaintiffs' default. After plaintiffs' delinquent brief was filed, the court treated the response as a motion to reconsider. Holland was granted an extension of time to file a response to the motion to reconsider. The motion to reconsider is granted and the motion to dismiss is reviewed anew.

## I. Background

In June 1988, the United States of America ("the government") filed a civil action in the New York court under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against IBT and its officers and

---

1. Plaintiff are 5 local unions and selected officers: Chauffeurs, Teamsters & Helpers, Lake County, Illinois, Local 301, and Robert Barnes, its President; Truck Drivers, Oil Drivers, Filling Station & Platform Workers, Local 705, and Donald Heim, Its President; State & Municipal Teamsters, Chauffeurs & Helpers, Local 726, and C.S. Spranzo, its Secretary–Treasurer; Bak-

ery Cracker, Pie, Yeast Wagon Drivers & Miscellaneous Workers, Local 734, and Robert N. Meidel, its President; and Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire & Rental, Chemical & Petroleum, Ice, Paper & Related Chemical & Production Employees Union, Local 781, and Joseph Bernstein, its President.

executive board. The parties reached a settlement agreement prior to trial providing for a consent decree.

The officers of the IBT consist of the General President ("President"), General Secretary–Treasurer ("Secretary–Treasurer"), sixteen Vice Presidents–International Representatives ("Vice Presidents") and three Trustees–International Representatives ("Trustees"). These officers constitute the General Executive Board. Under the IBT constitution, delegates from local unions elect IBT officers at a convention. Each local union is entitled to at least one delegate. Larger local unions are entitled to more delegates. Delegates are chosen first from the elected officers of the local unions and then, if additional delegates are needed, from elected business agents and non-salaried elected officers of the local unions.

The consent decree established a new election process: (1) direct rank and file secret ballot elections for 1991 delegates to the IBT international convention; (2) secret ballot delegate voting for nomination of the IBT President, Secretary–Treasurer and Vice Presidents and (3) direct rank and file secret ballot voting on the nominees. The consent decree provided for the New York court to appoint an administrator, investigator and election officer (collectively "the court officers") to oversee differing aspects of the operations of the IBT, with the election officer, Holland, to supervise the new IBT nomination and election process.

The consent decree provides that no final judgment is to be entered on the RICO action prior to the satisfactory completion and implementation of the terms and conditions of the order. Consent decree ¶¶ 16, 17. The consent decree grants the New York court "exclusive jurisdiction to decide any and all issues relating to the [a]dministrator's actions or authority...." Consent decree ¶ 16. The New York court has resolved disputes between IBT and the administrator regarding the consent decree. In October 1989, the administrator, Frederick Lacey, filed an application with the New York court to define the scope of the election officer's authority under the consent decree. On October 18, 1989, the New York court issued an opinion concluding that the election officer had broad powers to institute meaningful election reforms. *United States v. Int'l Bhd. of Teamsters, Warehousemen and Helpers of Am.*, 723 F.Supp. 203 (S.D.N.Y.1989).

The Chicago plaintiffs brought this action on November 17, 1989. On November 22, the New York court ordered the Chicago plaintiffs to show cause why the court should not enjoin them from taking any further action in connection with the Chicago lawsuit. Daniel Ligurotis was a party to the action in New York and signed the consent decree. Ligurotis was one of the Chicago plaintiffs. The New York court ordered Ligurotis to show cause why he should not be found in contempt. Of the Chicago plaintiffs, only Ligurotis responded to the show cause order.

The New York court concluded that the Chicago lawsuit constituted an attempt to subvert and frustrate the consent decree and subsequent court orders interpreting the consent decree. Pursuant to its powers under the All Writs Act, 28 U.S.C. § 1651, and the court's inherent equity powers, the New York court enjoined the Chicago plaintiffs, including Daniel Ligurotis, from proceeding except to file a notice of voluntary dismissal. The Chicago plaintiffs have not complied with the New York court's order. The New York court found Ligurotis in civil contempt by reason of his involvement in this lawsuit. The Court of Appeals for the Second Circuit stayed penalties assessed against Ligurotis and granted an expedited appeal.

On November 29, 1989, the Chicago plaintiffs amended their complaint to remove Daniel Ligurotis as a plaintiff, but failed to dismiss the action as instructed by the New York court. On December 15, 1989, the New York court issued an order requiring all subordinate IBT entities, over 700 in number, to show cause why an injunction should not be entered under the All Writs Act preventing them from filing any suit seeking to adjudicate matters relating to the consent decree anywhere except before the New York court. Many

subordinate bodies responded to the show cause order.

On January 17, 1990, the New York court issued a well-considered opinion enjoining the Chicago plaintiffs from pursuing this action. *United States v. Int'l Bhd. of Teamsters, Warehousemen and Helpers of Am.*, 728 F.Supp. 1032 (S.D.N.Y. 1990) ("the January 17, 1990 opinion"). The New York court concluded that the All Writs Act permits a federal court, under special circumstances, to enjoin a parallel proceeding and to bring before it parties otherwise not subject to its jurisdiction. The court viewed the consent decree as the jurisdictional nexus over matters relating to its implementation.

As a practical matter, the New York court perceived that the consent decree would be undermined unless suits were barred in other forums. First, the consent decree may be subjected to inconsistent interpretations. Second, the multitude of IBT subordinate entities could subvert IBT election reform by bogging down court officers in duplicative or harassing litigation. Third, the court reasoned that judicial economy would be served if similar issues were not litigated multiple times in different districts. The New York court ordered the remaining plaintiffs in this lawsuit to dismiss their action, or to acquiesce in the motion to transfer their suit to the New York court.

The January 17, 1990 opinion also resolved the issue whether IBT subordinate entities were bound by the consent decree. The New York court concluded that a recent Supreme Court decision, *Martin v. Wilks*, — U.S. —, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), does not prevent application of the consent decree to IBT subordinate entities. The New York court found that the IBT is a strongly centralized union that has secured itself against weaknesses typical of confederations. The court concluded that IBT adequately represented the interests of the local unions and other subordinate entities when it joined the consent decree. Accordingly, the court entered a permanent injunction barring the Chicago plaintiffs from pursuing this action.

The Chicago plaintiffs contest Holland's motions to dismiss and to transfer. Their four-count complaint alleges violations of section 101 of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(1) (Counts I and II), section 403 of the LMRDA, 29 U.S.C. § 483 (Counts I and II), section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185 (Counts III and IV) and the Fifth Amendment (Counts I–IV).

In Count I, the Chicago plaintiffs contend that the consent decree amended the IBT constitution without complying with Article III, §§ 8, 9 and Article IX, § 7 and in derogation of the plenary authority of the delegates to an IBT convention as set out in various provisions of the IBT constitution. They also contend that the consent decree amended the bylaws of the local unions without a membership vote. In Count II, the Chicago plaintiffs claim that the consent decree as interpreted by the New York court violates various IBT constitution provisions. In Count III, they contend that enforcement of the consent decree "constitutes violations of contract, *viz.*, provisions of the 1986 IBT constitution alleged herein." Second Amended Complaint, Count III ¶ 20. Finally, in Count IV, the Chicago plaintiffs assert that enforcement of the consent decree "constitutes violations of contract, *viz.*, provisions of Chicago plaintiffs Local Unions Bylaws alleged herein." Second Amended Complaint, Count IV ¶ 20.

## II. The Injunction Against The Chicago Plaintiffs

■ The threshold and dispositive issue in this case is whether this court should entertain an action that violates a court order entered by another federal court. The New York court enjoined the Chicago plaintiffs from pursuing this litigation in this court. The New York court afforded the Chicago plaintiffs two opportunities to contest the injunction before that forum. In November 1989, counsel for the Chicago plaintiffs failed to respond to an order to show cause. In December 1989, the New York court issued a nationwide order to

show cause to IBT subordinates. The court concluded that the IBT subordinates were subject to the consent decree. The New York court also concluded that it had exclusive jurisdiction to interpret the consent decree. Accordingly, the New York court enjoined the Chicago plaintiffs from pursuing this lawsuit.

 In order to reach a decision on the merits of the complaint, this court must either overrule the New York court or ignore the injunction. In certain circumstances, a federal court may enjoin proceedings in another federal court. *See, Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843–844 (district court exercised sound discretion in enjoining later filed declaratory judgment action in another federal court). *See also, Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.*, 804 F.2d 338 (5th Cir. 1986). This court concludes that it may not decide whether the New York court properly exercised its power under the All Writs Act because the appropriate forum for review of the injunction is the Court of Appeals for the Second Circuit.

Moreover, in the interests of comity, this court shall not ignore the well-considered action of the New York court. As a practical matter, an obvious conflict between this court and the New York court would arise if this court granted the declaratory and injunctive relief requested by the plaintiffs. A district court may dismiss a declaratory or injunctive suit when the same issues are pending in litigation elsewhere. *Bergh v. State of Washington*, 535 F.2d 505, 507 (9th Cir.1976) citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

> "The proper exercise of restraint in the name of comity keeps to a minimum the conflicts between courts administering the same law, conserves judicial time and expense, and has a salutary effect upon the prompt and efficient administration of justice."

*Bergh*, 535 F.2d at 507 quoting *Brittingham v. Commissioner*, 451 F.2d 315, 318 (5th Cir.1971). The New York court entertained the action that engendered the decree and subsequent actions interpreting the decree. The *New York court* has unique expertise regarding the decree. The only appropriate disposition of this action in light of the New York court's injunction is dismissal.

III. Conclusion

Plaintiffs' motion to reconsider this court's order of February 9, 1990 is granted. Holland's motion to dismiss is granted.