**In re NORTH AMERICAN OIL & GAS CO., Debtor.**

**UNITED STATES of America ex rel. Stanley WRIGHT, Liquidating Trustee, Plaintiff,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Defendants.**

**Bankruptcy No. 88–10358–C. Adv. No. 91–1080–C.**

United States Bankruptcy Court, W.D. Texas, Austin Division.

Aug. 13, 1991.

*tual* duties under the plan to distribute assets in accordance with the plan's terms.

Adrian M. Overstreet, Overstreet, Winn & Edwards, P.C., Austin, Tex., for Stanley Wright.

Richard L. Alexander, Brown Maroney & Oaks Hartline, Austin, Tex., for Fidelity & Deposit.

## DECISION AND ORDER ON MOTION OF PLAINTIFF FOR STAY OF PROCEEDINGS

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the Application For Stay Of Proceeding In Another Court And For Damages Pursuant To 28 U.S.C. § 1927 filed by Plaintiff Stanley W. Wright, Liquidating Trustee, and the response of Defendant Fidelity Deposit Company of Maryland.

### FACTUAL BACKGROUND

This adversary proceeding concerns the liability of Fidelity and Deposit Company of Maryland (Fidelity") on the bond of Robert James Moffitt, the former Chapter 11 Trustee in this case. Stanley W. Wright ("Wright"), the Liquidating Trustee under the confirmed plan in this case, sued on the bond on behalf of creditors of the estate, for damages arising from the alleged acts and omissions of Moffitt while he was acting as the trustee in the case.

Moffitt has himself filed for bankruptcy under Chapter 7 in the Southern District of Texas, Houston Division. In that case, Wright has objected to Moffitt's attempt to discharge his obligations to this estate, including (1) the obligation of Moffitt to repay to this estate approximately $118,000 in fees which this court ordered repaid to the estate by way of a disgorgement, and a sanction of $25,000, and (2) damages incurred by the estate as a result of Moffitt's malfeasance or misfeasance as a trustee. That action is brought pursuant to Section 523 of the Bankruptcy Code. Fidelity also objected to Moffitt's discharging any debt which he might owe to Fidelity as a result of Fidelity's having to pay on the bond, as a result of any judgment which might be entered in this adversary proceeding.

Fidelity has sought to intervene in Wright's objection to dischargeability in the Southern District of Texas case. As part of that proposed intervention, Fidelity wishes to assert a counterclaim for declaratory relief, requesting the bankruptcy court in Moffitt's bankruptcy to determine that Moffitt is not liable to Wright. The thrust of that counterclaim is to obtain precisely the same relief as Wright had already requested when he initiated this adversary proceeding in the Western District of Texas.

By this motion, Wright seeks to enjoin Fidelity's attempt to raise by counterclaim in the Southern District of Texas adversary proceeding the same issues as have already been joined in this adversary proceeding in the Western District of Texas. Fidelity resists, on grounds of judicial economy.

### ANALYSIS

A. *The injunction of proceedings question.*

"Generally, where a suit has been properly filed in one court, the filing of an identical suit in a second court does not deprive the first court of jurisdiction." *In re Burley,* 738 F.2d 981, 988 (9th Cir.1984); *see Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). *See* Fed.R.Bankr.P.Rule 9025 ("whenever the Code or these rules require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court, and liability may be determined in an adversary proceeding governed by the rules in Part VII"). Normally, the first court asked to adjudicate a matter has priority over a subsequent lawsuit involving the same facts. *Orthmann v. Apple River Campground, Inc.,* 765 F.2d 119, 121 (8th Cir. 1985) (courts follow a "first to file" rule that where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case). *See also Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.,* 804 F.2d 338, 343 (5th Cir.1986) (relying on

*Cowden Manufacturing Co. v. Koratron Co.,* 422 F.2d 371, 372 (6th Cir.1970), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2173, 26 L.Ed.2d 544 (1970)) (circuit court will reverse a district court's decision not to enjoin another proceeding only if the district court abused its discretion).

■ The district courts clearly do have the discretion to enjoin filing of related lawsuits in other United States district courts. *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Municipal Energy,* 804 F.2d at 343; *Schauss v. Metals Depository Corp.,* 757 F.2d 649, 654 (5th Cir.1985); *cf. Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (pendency of an action in a state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction). By virtue of Section 157(a), the bankruptcy courts have similar authority. 28 U.S.C. § 157(a). The general purpose is to avoid duplicative litigation. *Municipal Energy,* 804 F.2d at 343. However, "a careful considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976).[1]

■ When two actions involving the same parties and issues are pending in two districts, a court may also *decline* to enjoin the second proceeding, if "the balance of convenience" is sufficiently compelling to outweigh the priority otherwise afforded to prior actions. *Unilease Computer Corp. v. Major Computer Inc.,* 126 F.R.D. 490 (S.D.N.Y.1989). The *Unilease* court isolated six factors it found relevant to making this determination, including (1) the ade-

quacy of relief available in the alternative forum, (2) promotion of judicial efficiency, (3) the identity of parties and issues in two actions, (4) the likelihood of prompt resolution in alternative forum, (5) convenience of the parties, counsel, and witnesses, and (6) the possibility of prejudice to any party. *Id.*

Fidelity maintains that, in this case, judicial economy dictates that Fidelity be allowed to proceed with its counterclaim in Houston, on grounds that the same parties are involved in both actions, that the dischargeability action has to be decided by the Houston court anyway, that the same facts and transactions will be involved in the dischargeability action in Houston, that the same witnesses will have to be called in both cases, and that, therefore, it would be a more efficient use of judicial resources to try the entire matter before the bankruptcy judge in Houston.

Wright responds that the same facts will not necessarily be involved, as he merely seeks to obtain a nondischargeability determination as to the liability assessed by this court in its decision ordering disgorgement and assessing a sanction (an amount far less than the total damages suffered by this estate, according to Wright), and that the attempt to bring the action in Houston is thinly veiled forum shopping on the part of Fidelity, which hopes to avoid what it believes to be the presentiments of this court.

The court notes at the outset that both this court and the bankruptcy court in Houston are equally qualified to hear this action. Without a doubt, Judge Wheless has long experience with the obligations of trustees in bankruptcy cases and can as easily adjudicate the issue presented in this adversary proceeding as can this court. That is really not the question.[2]

1. An especial concern in this case is the possibility that forum shopping is at work here. Fidelity would have high motivation to seek an alternative to this forum in which to try its potential liability on its bond, given that this court has already issued a decision criticizing the bonded trustee's handling of this case. The prospect of forum shopping is heightened by the fact that the duplicative litigation sought to be initiated

in the Houston forum is peripheral to the main action (which involves Wright and Moffitt on the dischargeability of Moffitt's personal liability to the NAOG estate, if any).

2. There may be a question over whether the Houston court would have the jurisdiction to entertain the counterclaim, involving as it does a claim of Wright against Fidelity, the outcome

The issue is whether the concerns set out in *Unilease* so predominate that, notwithstanding the well-settled rule that the first court whose jurisdiction is invoked should hear the case, the court should nonetheless permit the second action to proceed. In deciding that question, the court must at the outset keep firmly in mind the important policies which motivate the general rule against acceding to the alternative forum unilaterally selected by a party. *See Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183–85, 72 S.Ct. 219, 221–22, 96 L.Ed. 200 (1952), and cases cited therein.

The *Unilease* decision suggests that deferring to the second action may be appropriate if there are *compelling reasons* for doing so. The court concludes that while there may be reasons, they are not sufficiently compelling to override the policy that favors the first forum selected by the plaintiff, the first court to have obtained jurisdiction over the dispute.[3]

### 1. Adequacy of relief available in alternative forum.

With regard to the first element cited in *Unilease*, the adequacy of the relief available in the alternative forum, the court has already adverted to the ability of another bankruptcy judge to decide such a question. However, that judge lacks the experience which this court has had with the bankruptcy case out of which the liability is said to have arisen, depriving that court of a good deal of the "feel" for the case which this court already has. In addition, as has been observed, there is some question whether that court would have jurisdiction over the subject matter of the counterclaim for declaratory relief, involving as it does a discrete dispute between two non-debtor parties which would not, in all likelihood, affect the administration of Moffitt's bankruptcy estate. *See* note 2 *supra*. This court, by contrast, has clear jurisdiction over both the trustee (as the court which appointed the trustee) and over the bonding company (which is deemed to have submitted to the jurisdiction of the court which appoints the trustee). *See* Fed.R.Bankr.P. 2010, 9025; *see also In re Campbell*, 13 B.R. 974, 976 (Bankr.D.Idaho 1981) (courts other than the trustee's appointing court have no jurisdiction to entertain suits against trustee for acts done in trustee's official capacity without leave of appointing court, citing *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881)). Adequacy of relief does not, in this case, stand as a compelling reason for deferring to the alternative forum unilaterally selected by Fidelity.

### 2. Judicial economy.

The second factor, that of judicial economy, upon which Fidelity most heavily relies, does not weigh so heavily in favor of Fidelity as it might first appear. Invariably, the parties in the Houston case would have to recreate the flow of this entire bankruptcy case for the Houston court, at great expense to all parties, in order to try the surety case. While the nondischargeability action, of itself, is a relatively simple (at least for an experienced bankruptcy judge) matter to resolve, liability on a trustee's bond is quite another, considerably more drawn-out affair. It is hardly economical to add such freight to a nondischargeability action, delaying in the process Mr. Moffitt's resolving whether he will receive his fresh start.[4] Judicial econo-

---

of which is not likely to affect the administration of the Moffitt bankruptcy case, as Moffitt's only real relation to the counterclaim is that of a witness. *See Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987). Though this court has no right to pass on whether the Houston court would in fact have subject matter jurisdiction over the counterclaim, the probable lack of jurisdiction tends to reinforce the conclusion reached by this court on this motion.

**3.** *See Matter of Village Properties, Ltd.*, 723 F.2d 441, 446 (5th Cir.1984), *cert. denied*, 466 U.S.

974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) (noting that forum shopping is discouraged); *see generally In Re Burley*, 738 F.2d at 981; *Orthmann*, 765 F.2d at 121.

**4.** Even if the transactions which form the basis for liability were essentially the same, the nondischargeability of Wright's claims against Moffitt are neither contingent on nor determinative of Fidelity's liability to Wright. *Compare United States ex rel. Bill v. Perkins*, 280 F. 546, 549 (8th Cir.1922) *with Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir.1982). While Fideli-

my may therefore actually favor the forum selected by Wright, as the Houston bankruptcy court need not resolve this litigation in order to decide Wright's nondischargeability action against Moffitt.[5]

To be sure, the litigation is going to take up Wright's time and Fidelity's time, but that is going to happen anyway. Also, to be sure, it will take up this court's time, but, as the forum first selected by the plaintiff, this court has a duty to try the cases filed on its docket anyway. *Colorado River Water Conservation District v. United States*, 424 U.S. at 818, 96 S.Ct. at 1246. Notions of judicial economy therefore furnish no compelling reasons in this case why this lawsuit ought to be dumped into the lap of the Houston bankruptcy court.

### 3. Identity of parties and issues.

There is, of course, a facial identity of parties in both actions,[6] but not necessarily an identity of issues. But for the counterclaim, the only issue before the Houston bankruptcy court in the Wright adversary is that of nondischargeability, a relatively narrow legal and factual issue. The counterclaim introduces the entire underlying litigation, already pending in this court, adding factual and legal issues not currently before that court.[7] For example, the question of the level of culpability of Mr. Moffitt's conduct raised in an action on the bond may not be the same as that required for a showing of nondischargeability. *Compare Ford Motor Credit Corp. v. Weaver*, 680 F.2d 451, 461 (6th Cir.1982) (personal liability only for acts wilfully and deliberately in violation of fiduciary duties) *with United States ex rel. Willoughby v. Howard*, 302 U.S. 445, 449–454, 58 S.Ct. 309, 311–314, 82 L.Ed. 352 (1938) (failure to exercise ordinary care in discharge of official duties raises liability of surety); *United States ex rel. Bills v. Perkins*, 280 F. 546, 549 (8th Cir.1922) ("[s]ureties on official bonds are liable for negligence or malfeasance of their principle in the performance of acts which are done virtute officii").[8] Fidelity has not even established

ty's intervention in the Houston action is certainly not before this court, there seems to be considerable doubt that such intervention is necessary wholly *apart* from the counterclaim. As for judicial economy, the party who would have the most cause to complain about its lack is Wright, but he is not complaining.

5. It may be that the outcome of Wright's action against Fidelity will have some affect on *Fidelity*'s nondischargeability action against Moffitt, but that is not the complaint in which Fidelity urged the counterclaim. In the interest of aborting any fetal thoughts that perhaps that course ought to be explored, the court has already concluded that the analysis applied in this decision would apply for the most part to any effort to urge the counterclaim in the Fidelity nondischargeability action as well.

6. Actually there is not yet an identity of parties, as the Houston court has not yet permitted the intervention by Fidelity, hardly a foregone conclusion at this point. Apart from the counterclaim, Fidelity's "intervention" seems to be premised on the notion that it matters to Fidelity whether Moffitt does or does not receive a discharge of Wright's claims. So far as this court can determine, that notion seems not to be well-founded, as discharge of the bonded party does not appear to be a valid defense to liability of the bonding company. *See generally Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985) (discharge of the principal debtor in bankruptcy will not discharge the liabilities of

co-debtors or guarantors); *see, e.g., Mazur v. Stein*, 314 Ill.App. 529, 41 N.E.2d 979 (1942); *Pettus v. Cummings*, 121 Okl. 271, 249 P. 740 (1926).

7. The plaintiff has here argued that he has sought to amend his dischargeability suit to limit that action solely to the question of the dischargeability of this court's decision requiring disgorgement and assessing a sanction. If that amendment stands, then indeed the facts in the Western District action will be far more expansive in scope than the facts involved in the dischargeability action. However, that amendment has not yet been approved.

8. In *In re Reich*, 54 B.R. 995, 999–1001 (Bankr. E.D.Mich.1985), Judge Spector criticizes the Sixth Circuit's higher culpability standard announced in *Ford Motor Credit Corp. v. Weaver*, concluding that that circuit, along with the Tenth Circuit in *Sherr v. Winkler*, 552 F.2d 1367 (10th Cir.1977), misunderstood the holding of the Supreme Court in *Mosser v. Darrow*, 341 U.S. 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951). *Reich* opts instead for the Ninth Circuit's formulation in *In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir.1983), which held that a trustee is subject to personal liability for not only intentional but also negligent violations of imposed upon him by law. Regardless of the level of culpability required to impose liability on a person who serves as trustee, how-

with a certainty that there even is an identity of parties and issues in this case, much less that such an identity is so compelling as to warrant permitting the second action to proceed in lieu of the adversary proceeding pending in this district.

### 4. Availability of prompt adjudication.

The question of prompt adjudication is evenly split. In this district, an adversary proceeding goes to trial within 120 days of the filing of the answer, unless the parties' discovery needs necessarily lengthen the process. This court doubts that the Houston court is likely to reach trial any quicker than that, and any discovery needs which lengthen trial time in this court would similarly lengthen trial time in the Houston court. This issue does not in any compelling sense favor the Houston forum.

### 5. Convenience to parties, counsel and witnesses.

In terms of convenience to the parties, counsel and witnesses, only Mr. Moffitt's residence favors the Houston forum, and even that advantage is undercut by the fact that Moffitt was willing to serve as a trustee in an Austin case for nearly a year notwithstanding his Houston residency. The lawyers for both Fidelity and Wright are located in Austin, a short drive from San Antonio (where this case is likely to be tried) and both frequently practice in this court. The witnesses are as likely to be drawn from this area as they are from Houston, while the documentary evidence is for the most part located in the Western District of Texas. This element does not compel deferring to the alternative forum selected by Fidelity.

### 6. Possibility for prejudice.

▆▆▆ With regard to the possibility of prejudice, an action in Houston is more likely to result in an attempt at collateral attack on prior final adjudications than an action in San Antonio, with the potential for inconsistent judgments and questions about which jurisdiction's orders are controlling. The only possibility of prejudice militating against this forum, though not articulated by the parties (at least not by Fidelity), but anticipated by this court, would be Fidelity's fear that this court might already have made up its mind on the issues. That concern does not mandate overriding the policy of favoring the forum selected by the plaintiffs, however, for two reasons. First, if a party is truly concerned about bias, the proper remedy is to seek recusal pursuant to 28 U.S.C. § 455(a).[9] Even a favorable ruling on such a motion would not result in trial of the case in Houston, however. Instead, the matter would simply be transferred to another judge in this district. Second, an action on a trustee's bond involves fundamentally different questions from an action

---

ever, once that person files bankruptcy, that liability will be measured against the standards of Section 523 to reckon dischargeability.

**9.** The court notes in passing that mere familiarity with a case, and even adverse rulings on previous motions in a case, do not form a basis for recusal. *Ouachita Nat. Bank v. Tosco Corp.,* 686 F.2d 1291, 1300 (8th Cir.1982); *United States v. Mirkin,* 649 F.2d 78, 81 (1st Cir.1981). Being persuaded is not the same thing as being partial.

> The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.

*United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *see In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1314 (2d Cir.1988). Adds Wright, Miller & Cooper,

> It is not enough that the judge has acquired from what has gone on in open court or in chambers a personal conviction as to the merits of the case. Nor is the judge disqualified merely because he has presided over some other case involving the same party or closely related facts. It is not enough that the judge has ruled adversely to the party at an earlier stage of the case or that he has ruled favorably to the opponent of the party who is seeking disqualification.

13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3542 at 559 *et seq.* (1984) (citing numerous cases); *see United States v. International Business Machines Corp.,* 618 F.2d 923, 930 (2d Cir.1980) ("[t]here is no authority for, and no logic in, assuming that either party to a litigation is entitled to a certain percentage of favorable decisions").

on a trustee's fee application (the only action tried to judgment to date in this action). The level of culpability required for liability on a bond is higher than that which must be demonstrated to reduce a trustee's fee. *Compare United States ex rel. Willoughby v. Howard*, 302 U.S. 445, 454, 58 S.Ct. 309, 314, 82 L.Ed. 352 (1938) (discussion of liability of surety of chapter 7 trustee) *with Callaghan v. Reconstruction Finance Corp.*, 297 U.S. 464, 468, 56 S.Ct. 519, 521, 80 L.Ed. 804 (1936) (discussion of trustee compensation); *see also In re Perelstine*, 44 F.2d 62, 63–64 (W.D.Pa.1930), *aff'd*, 46 F.2d 1019 (3rd Cir.1931). Too, plaintiffs in an action on a bond must establish damages and causation, neither of which are directly at issue in the court's consideration of a trustee's application for fees. *See In re Perelstine*, 44 F.2d at 63–64; *Goldberger v. Ralph Horan Transamerica Ins. Co. (In re Traffic Safety)*, 21 B.R. 669 (Bankr.E.D.Pa.1982). These questions have not even been tried in this court to date.

In short, if there is a possibility of prejudice in this case, it is most likely to emerge if the second action proceeds. The element thus cuts *against* favoring the second forum.

As the foregoing analysis demonstrates, the *Unilease* standard has not been met here, though even if it were, the decision to enjoin the second action under the general authority recognized in *Municipal Energy* and *Orthmann* would not be disturbed absent an abuse of discretion not likely to be found under the facts of this case.

One additional point needs to be made. As the cases now stand, we could easily be left with two courts trying the same lawsuit, solely because Fidelity initiated the second action knowing full well of the pendency of the first action. While it is true that the availability of a *forum* for the second action was created not by Fidelity but by Moffitt (i.e., by his filing bankruptcy in Houston), acceding to Fidelity's unilaterally placing these two courts in the position

in which they now find themselves is not a policy this court wishes to further. Moffitt's bankruptcy, in terms of the forum opportunity it presented to Fidelity, was merely serendipitous. But for that, Fidelity would have had to have proceeded in this forum, for better or worse. Accepting Fidelity's argument opens the door to bonding companies urging their trustees to file bankruptcy as a device for opening up alternative forums, whenever the forum in which the trustee served is perceived to be unfavorable to the surety (as it will in almost every case). If there is even to be such a door at all, it should be a small and narrow one, guarded by watchful judges, and opened for only the most compelling reasons. Those reasons are not present here.

This court, in aid of its jurisdiction, therefore deems it appropriate to enjoin further pursuit of Fidelity's counterclaim in the Houston dischargeability proceeding. No compelling reasons have been presented to this court why the court should not so act to preserve its jurisdiction. In fact, the court notes that, by not acting, two actions would be left pending before two different courts, with all the potential that creates for inconsistent results and competing rulings.

B. *The 28 U.S.C. § 1927 sanctions question.*

■ The plaintiff has sought sanctions under 28 U.S.C. § 1927 against counsel for Fidelity. The exigencies of this case are such that sanctions are not appropriate. It is of course true that this provision is available to sanction attempts at forum shopping. In this case, however, counsel for Fidelity observed that it first sought relief from the automatic stay in the Houston bankruptcy case to join Moffitt as a third party defendant in this adversary proceeding, in the hopes of joining all issues, dischargeability and otherwise, before this court. Although the motion was unopposed, the Houston court denied the requested relief.[10] Fidelity then sought to

---

**10.** It is important to note that Mr. Moffitt, the respondent to that motion, was and is unrepresented by counsel, perhaps contributing to the Houston judge's decision to deny the requested

intervene in Wright's dischargeability action. This course of action demonstrates an attempt by Fidelity to achieve the judicial economy which it now argues in this case, albeit misdirected.[11] Accordingly, sanctions pursuant to Section 1927 are not appropriate.

## CONCLUSION

Because this is the first forum where jurisdiction was sought, and because there are no compelling reasons why this court should not preserve its jurisdiction, this court concludes that it remains the most appropriate forum in which to determine the extent of liability of Fidelity to this estate. *See* Bankr.R. 9025; *Orthmann*, 765 F.2d at 121; *Unilease*, 126 F.R.D. at 490, et seq. Accordingly, this court enjoins any further action to bring this particular action before any other court, including by means of the counterclaim in the dischargeability action currently the subject of Fidelity's motion to intervene in the Wright nondischargeability adversary proceeding now pending before the bankruptcy court for the Southern District of Texas in Mr. Moffitt's bankruptcy case. *Kerotest Mfg. Co.*, 342 U.S. at 183–85, 72 S.Ct. at 221–22; *Municipal Energy*, 804 F.2d at 343. For the reasons stated, no sanctions pursuant to 28 U.S.C. § 1927 will issue.

So ORDERED.

relief. In addition, that judge may have been as unwilling to have this court decide a dischargeability question raised in Moffitt's case as is this court to have another court decide Fidelity's liability on its bond in this case. The court therefore in no way questions the wisdom of the Judge Wheless' decision not to grant the relief from stay requested by Fidelity.

11. The adversary proceeding which would have, under Fidelity's theory, provided the best forum for adjudicating all disputes was not Wright's nondischargeability action but Fidelity's, for in that action, Fidelity's nondischargeability claim is necessary only to the extent that Fidelity itself is found liable to the North American Oil & Gas bankruptcy estate. To obtain that "economy," however, Fidelity would have had to have obtained court permission to add Wright as a third party defendant, a move which would have more obviously looked like forum shopping and which would also have tended to trigger that court's understandable concern that such a third party action might be beyond the jurisdiction of the Houston bankruptcy court to hear. *See* 28 U.S.C. § 1334(b). The court cannot of course guess at the mindset of the attorneys for Fidelity and would be reluctant to premise Section 1927 sanctions solely on such ruminations as these.